**PORTER HEDGES LLP**
John F. Higgins
State Bar No. 09597500
Alison P. Henderson
State Bar No. 24087707
1000 Main Street, 36th Fl.
Houston, Texas, 77002
Email: jhiggins@porterhedges.com
Email: ahenderson@porterhedges.com

– and –

**BROWN RUDNICK LLP**
Sigmund S. Wissner-Gross
Kenneth J. Aulet
Seven Times Square
New York, New York 10036
Email: swissner-gross@brownrudnick.com
Email: kaulet@brownrudnick.com

*Counsel for Defendants*

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **DUNE ENERGY, INC.,**<br>**DUNE OPERATING COMPANY**<br>**DUNE PROPERTIES, INC** | §<br>§<br>§ | **CASE NO. 15-10336-HCM**<br>**CASE NO. 15-10337-HCM**<br>**CASE NO. 15-10338-HCM** |
| | § | |
| **Debtors.** | §<br>§ | **(JOINTLY ADMINISTERED**<br>**UNDER CASE NO. 15-10336)** |
| | §<br>§ | |
| **DAN B. LAIN, TRUSTEE OF THE**<br>**DUNE PLAN TRUST,** | §<br>§ | |
| | § | |
| **Plaintiff,** | §<br>§ | **ADV. PRO. NO. 17-01052-HCM** |
| **vs.** | §<br>§ | |
| **JAMES A WATT, ET AL.** | §<br>§ | |
| **Defendants.** | § | |

## TABLE OF CONTENTS

**Page**


I. Introduction ..... 1

II. Procedural Background ..... 3

III. Allegations of the Amended Complaint ..... 5

- a. The Plaintiff ..... 5
- b. The Defendants ..... 5
- c. The Allegations ..... 6
- d. The Claims ..... 12

IV. Argument and Basis for Relief ..... 13

- A. Pleading Standard ..... 13
- B. The Corporate Duty Claims and the Alternative Theory Claims Asserted Under Texas Law Should Be Dismissed ..... 14
- C. The Corporate Duty Claims Fail to State a Claim for Breach of Delaware Fiduciary Duties ..... 16
  - a. The Business Judgment Rule Bars the Trustee's Claims ..... 16
  - b. The Trustee's Allegations Fail to Plead a Breach of the Duty of Care ..... 18
  - c. The Trustee's Allegations Fail To Plead a Breach of the Duty of Loyalty ..... 21
  - d. The Director Defendants Are Exculpated from Liability for Breaches of the Duty of Care ..... 24
  - e. All Claims Based On Alleged Misconduct Prior To March 8, 2012 Are Time-Barred ..... 26
- D. The Alternative Theory Claims (Counts 8-14, 17) Fail To State a Claim ..... 29
- E. The Texas Securities Claim Fails To State a Claim ..... 32
- F. The Clawback Claims Should Be Dismissed as Against the Director Defendants and Amiel David ..... 34
- G. All Claims Against Released Directors Should Be Dismissed ..... 35
- H. The Claims and Allegations Asserted Against Defendants Who Were Not Affiliated With Dune at The Time Should Be Dismissed ..... 36

V. Conclusion ..... 37




6151775

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


Adams v. LeCompte,
No. 1220 CIV.A. 1975, 1977 WL 182079 (Del. Super. Ct. Apr. 14, 1977)............................31

AM Gen. Holdings LLC v. The Renco Grp., Inc.,
C.A. Nos. 7639-VCS, 7668-VCS, 2016 WL 4440476 (Del. Ch. Aug. 22, 2016) ..........27

Stone ex rel. AmSouth Bancorporation v. Ritter,
911 A.2d 362 (Del. 2006) ..........16, 21

Aronson v. Lewis,
473 A.2d 805 (Del. 1984) ..........16

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..........14

Aurelius Capital Master, Ltd. v. Acosta,
No. 3:13-CV-1173-P, 2014 WL 10505127 (N.D. Tex. Jan. 28, 2014)..........29

Bailey v. Shell Western E&P, Inc.,
609 F.3d 710 (5th Cir. 2010) ..........4

Beavers v. Metro. Life Ins. Co.,
566 F.3d 436 (5th Cir. 2009) ..........14

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)..........13, 14

Brehm v. Eisner,
746 A.2d 244 (Del. 2000) ..........16, 17, 18, 29

Broz v. Cellular Info. Sys., Inc.,
673 A.2d 148 (Del. 1996) ..........23

Calma on Behalf of Citrix Sys., Inc. v. Templeton,
114 A.3d 563 (Del. Ch. 2015)..........30, 31

Cede & Co. v. Technicolor, Inc.,
634 A.2d 345, modified on reargument, 636 A.2d 956 (Del. 1994).......... *passim*

In re Citigroup Inc. S'holder Derivative Litig.,
964 A.2d 106 (Del. Ch. 2009)..........17, 19, 25

Collins v. Morgan Stanley Dean Witter,
224 F.3d 496 (5th Cir. 2000) ....................................................................................14

Corwin v. KKR Fin. Holdings LLC,
125 A.3d 304 (Del. 2015) ..........................................................................................17

DiRienzo v. Lichtenstein,
C.A. No. 7094-VCP, 2013 WL 5503034 (Del. Ch. Sept. 30, 2013)........................................36

Feeley v. NHAOCG, LLC,
62 A.3d 649 (Del. Ch. Ct. 2012)...................................................................................18

Fike v. Ruger,
754 A.2d 254 (Del. Ch. 1999).......................................................................................26

Freedman v. Rest. Assocs. Indus., Inc.,
No. CIV.A. 9212, 1987 WL 14323 (Del. Ch. Oct. 16, 1987)..........................................17, 21

Gantler v. Stephens,
965 A.2d 695 (Del. 2009) ......................................................................................16, 17

George L. Miller, v. Kirkland & Ellis LLP (In re: IH 1, Inc.),
No. 09-10982 (LSS), 2016 WL 6394296 (Bankr. D. Del. Sept. 28, 2016) ............................27

Hall v. Dorsey,
No. 96C-06-045, 1998 WL 960774 (Del. Super. Ct. 1998) ...................................................32

HECI Exploration Co. v. Neel,
982 S.W.2d 881 (Tex. 1998).........................................................................................27

Kaye v. Dupree (In re Avado Brands, Inc.),
358 B.R. 868 (Bankr. N.D. Tex. 2006)............................................................................26

Krahmer v. Christie's Inc.,
903 A.2d 773 (Del. Ch. 2006).......................................................................................27

Krasner v. Moffett,
826 A.2d 277 (Del. 2003) ...........................................................................................17

In re Lear Corp. S'holder Litig.,
967 A.2d 640 (Del. Ch. 2008).......................................................................................31

In re Marvel Entm't Grp., Inc.,
273 B.R. 58 (D. Del. 2002)..........................................................................................27

McMillan v. Intercargo Corp.,
768 A.2d 492 (Del. Ch. 2000)...................................................................................22, 25



6151775

Mergenthaler v. Asbestos Corp. of Am., Inc.,
534 A.2d 272 (Del. Super. Ct. 1987) .....32

In re Midway Games Inc.,
428 B.R. 303 (Bankr. D. Del. 2010) .....34

Molnar v. Wibbelt,
789 F.2d 244 (3d Cir. 1986).....32

Monroe Cnty. Emps.' Ret. Sys. v. Carlson,
Civ. A. No. 4587-CC, 2010 WL 2376890 (Del. Ch. June 7, 2010).....31

Motor Carrier Audit & Collection Co., a Div. of Delta Traffic Serv., Inc. v. Lighting Prods., Inc.,
113 B.R. 424 (N.D. Ill. 1989) .....28

N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla,
930 A.2d 92 (Del. 2007) .....30

Paramount Commc’ns, Inc. v. QVC Network, Inc.,
637 A.2d 34 (Del. 1994) .....16

Parnes v. Bally Entm’t Corp.,
722 A.2d 1243 (Del. 1999) .....16

Pilepro, LLC v. Chang,
152 F. Supp. 3d 659, 674-75 (W.D. Tex. 2016) .....15, 26

In re Radnor Holdings Corp.,
353 B.R. 820 (Bankr. D. Del. 2006) .....30

Ramunno v. Persimmon Lane Apartments,
Civ. A. No. 80-102-1976, 1976 WL 146604 (Del. Com. Pl. July 8, 1976) .....31

RSH Liquidating Trust v. Magnacca,
553 B.R. 298 (Bankr. N.D. Tex. 2016).....18, 25

Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan,
883 F.2d 345 (5th Cir. 1989) .....15

State Farm Mut. Auto. Ins. Co. v. Lopez,
156 S.W.3d 550 (Tex. 2004).....15

Sternberg v. O’Neil,
Civ. A. No. 8592, 1989 WL 137932 (Del. Ch. 1989).....36

Torch Liquidating Trust v. Stockstill,
561 F.3d 377 (5th Cir. 2009) .....14, 30

Torch Liquidating Trust v. Stockstill,
No. 07-133, 2008 WL 696233 (E.D. La. Mar. 13, 2008) aff'd, 561 F.3d 377 (5th Cir. 2009) .....33

Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., et al.,
906 A.2d 168 (Del. Ch. 2006) .....15, 30

True v. Robles,
571 F.3d 412 (5th Cir. 2009) .....14

In re Walt Disney Co. Derivative Litig.,
906 A.2d 27 (Del. 2006) .....31

West v. Avery (In re Noram Resources, Inc.),
Adv. No. 10-03701, 2011 WL 5357895 (Bankr. S.D. Tex. Nov. 7, 2011) .....26

Xtreme Power Plan Trust v. Schindler (In re Xtreme Power Inc.),
563 B.R. 614 (Bankr. W.D. Tex. 2016) ..... *passim*

**Statutes**

6 Del. C. § 1309 .....34

8 Del. C. § 102(b) .....24

8 Del. C. § 102(b)(7) .....24

8 Del. C. § 141(e) .....19, 21, 25

10 Del. C. § 8106 .....26

11 U.S.C. § 108(a) .....28

11 U.S.C. § 544 .....34

11 U.S.C. § 548(a)(1)(B) .....34

28 U.S.C. § 1404 .....4

28 U.S.C. § 1412 .....4

28 U.S.C. § 1441 .....4

28 U.S.C. § 1452 .....4

Tex. Bus. & Com. Code § 27.01(b) .....33

Tex. Bus. Orgs. Code §§ 1.102 .....15

Texas Bus. & Com. Code § 24.010 ....................34

**Other Authorities**

Fed. R. Bankr. P. 7008 ....................13

Fed. R. Bankr. P. 7012 ....................13

Fed. R. Civ. P. 8(a)(2) ....................13

Fed. R. Civ. P. 12(b)(6) ....................1, 13, 14

Fed. R. Civ. P. 15(a)(2) ....................5, 7, 8, 9

Fed. R. Civ. P. 41(a) ....................4

# MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Defendants James A. Watt, Frank T. Smith Jr., Hal L. Bettis, Amiel David, Alan Gaines, Alan D. Bell, Alexander A. Kulpecz, Jr., Emanuel R. Pearlman, Eric R. Stearns, John A. Brecker, Marjorie L. Bowen, Michael A. Keener, Richard M. Cohen, Robert A. Schmitz, Stephen P. Kovacs, Steven Barrenchea, Steven M. Sisselman, and William E. Greenwood (the "Defendants"), by and through their undersigned counsel, file this *Motion To Dismiss Plaintiff's First Amended Original Petition* (the "Motion") seeking to dismiss 16 of the 18 counts in the Plaintiff's First Amended Original Petition (the "Amended Complaint")[1] pursuant to Federal Rule of Civil Procedure 12(b)(6), and respectfully state as follows:

## I. Introduction

1. Dune Energy Inc. ("Dune" or "Dune Energy" and together with its wholly-owned subsidiaries the "Dune Entities") was an independent energy company that operated for over

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Amended Complaint.

fifteen years before filing for relief under chapter 11 of the Bankruptcy Code in 2015. Dune's ultimate demise was the consequence of a collapse in oil and gas prices in 2014 and early 2015.[2] In late 2014, after obtaining the assistance of the investment firm Perella Weinberg Partners, Dune entered into a contract with Eos Petro, Inc. ("Eos Petro"), pursuant to which Eos Petro agreed to acquire Dune. However, as oil and gas prices continued to fall in late 2014 and early 2015, Eos Petro was unable to secure the financing to complete its purchase of Dune and the deal collapsed. Dune filed for bankruptcy on March 8, 2015 (the "Petition Date").

2. Defendants are former directors and officers of Dune. The Amended Complaint represents the Trustee's attempt to concoct plausible claims against Defendants by second-guessing every act and decision they made. Such efforts are futile as no part of the Trustee's narrative produces claims that are remotely actionable. Remarkably, the centerpiece of this senseless and baseless lawsuit is an acquisition by Dune of oil and gas assets that occurred *almost a decade ago*. The alleged conduct upon which purported claims arise from this 2007 acquisition are well beyond any possible statute of limitations and, as explained below, were never actionable. Following this acquisition, Dune's management oversaw and directed the operation of Dune while attempting to cope with environmental liabilities, the operational and financial complexities of the industry, and the vicissitudes of the capital markets. Ultimately, management saw that Dune would be unable to sustain its continuing operations and sought to sell the company. As mentioned, these efforts were ultimately unsuccessful, and Dune's bankruptcy followed.

3. All of the factual allegations of the Amended Complaint describe conduct to which applicable corporate law is extraordinarily deferential: the making of ordinary business

[2] See Declaration of Donald R. Martin, Chief Restructuring Officer of Dune Energy Inc. and Its Subsidiaries, In Support Of First Day Pleadings (the "Martin Declaration"), Case No. 15-10336, ECF No. 14.

decisions by unconflicted managers and directors. Such conduct is not made actionable because the Trustee has interspersed his partial and selective recounting of events with barebones and conclusory allegations of negligence, bad decision-making, and vague claims of "conflicts" and "self-interest." Dune was a public company and its transactions are amply documented. Yet, despite having had possession of the public filings and other books and records of Dune for approximately a year and a half, the Amended Complaint relies on conclusory assertions of misconduct and bad faith and identifies no plausible basis for liability.[3] Under the business judgment rule, Defendants are entitled to the presumption that they acted on an informed basis, in good faith, and in the honest belief that their action was in the best interest of the company, and they are entitled to dismissal of claims that fail to rebut that presumption. The Trustee's pleading falls far short of asserting facts that, if true, could conceivably rebut that presumption.

4. In addition to its formulaic allegations of breach of fiduciary duties under applicable Delaware law, the Amended Complaint heaps on Defendants numerous make-weight claims based on the exact same alleged conduct. As demonstrated herein, these other claims are asserted under inapplicable law (such as Texas corporate law, which under Texas choice of law rules is inapplicable to a Delaware corporation such as Dune), are insufficiently pled, simply do not exist as cognizable claims, are time barred, have been released, and/or are otherwise legally deficient.

5. Defendants are being sued by the Trustee merely because Dune ultimately was unable to continue its operations and filed for bankruptcy. This is not a ground for relief under any law. The Amended Complaint should be dismissed in its entirety (with the exception of certain clawback claims), with prejudice and without leave to replead.

---

[3] See, e.g., ¶ 106 ("the precise scope of his liability will necessarily wait until discovery unfolds"). References herein to "¶" are to the paragraphs of the Amended Complaint.

## II. Procedural Background

6. On March 8, 2015, Dune Energy Inc. and its two wholly owned subsidiaries, Dune Operating Company and Dune Properties, Inc., commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"). On September 18, 2015, the Bankruptcy Court entered an order confirming a plan of reorganization (the "Plan"). On September 30, 2015, the Effective Date of the Plan occurred and the Plan was consummated. The Plan provided for the creation of the Dune Plan Trust and the assignment of certain causes of action (the "Transferred Claims") owned by Dune to the Dune Plan Trust. The Trustee has alleged the Dune Plan Trust was duly created and he was duly appointed as the Trustee of the Dune Plan Trust.

7. On or about March 6, 2017, the Trustee commenced this action through the filing of the Plaintiff's Original Petition (the "Original Petition") in the District Court of Brazoria County, Texas (the "State Court"). On or about March 7, 2017, the Trustee filed the Amended Complaint in the State Court. On the same day, March 7, 2017, the Trustee filed eight individual adversary proceedings against certain Defendants in the Bankruptcy Court. In addition, on the same day, the Trustee filed four additional individual adversary proceedings (all individual adversary proceedings being collectively referred to as the "Individual Clawback Actions") against four former directors and officers of Dune who are not Defendants in this action.

8. On March 24, 2017, Defendants timely removed this action to the Southern District of Texas pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1452. On April 11, 2017, the Southern District of Texas District Court entered an order transferring this action to the Western District of Texas pursuant to 28 U.S.C. § 1404 and 28 U.S.C. § 1412.

9. On April 12, 2017 the Trustee filed a document titled Notice of Voluntary Dismissal of Counts XV and Count XVI [ECF No. 14] (the "Notice of Dismissal") in this proceeding, purporting to dismiss Counts 15 and 16 of the Amended Complaint pursuant to Fed. R. Civ. P. 41(a). The Notice of Dismissal was improper as a plaintiff may only use Fed. R. Civ. P. 41(a) to dismiss its entire action against a defendant. See Fed. R. Civ. P. 41(a)(1)(A)(i); Bailey v. Shell Western E&P, Inc., 609 F.3d 710, 720 (5th Cir. 2010) ("Rule 41(a) dismissal only applies to the dismissal of an entire action - not particular claims."). Accordingly the Notice of Dismissal is ineffective and failed to dismiss Counts 15 and 16 of the Amended Complaint, and they remain a part of the Amended Complaint unless and until this Court grants the Trustee leave to further amend the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

10. On May 3, 2017 the Honorable Judge Pitman of the District Court for the Western District of Texas entered an order referring this action to this Court.

## III. Allegations of the Amended Complaint

### a. The Plaintiff

11. Dan B. Lain alleges that he is the duly appointed Trustee of the Dune Plan Trust, which he alleges was created pursuant to the Plan. ¶ 5.

### b. The Defendants

12. The Amended Complaint names James A. Watt ("Watt"), the former President and CEO of Dune, Frank T. Smith ("Smith"), the former CFO of Dune, Hal L. Bettis ("Bettis"), a former Executive Vice President of Dune, and Amiel David ("David"), an advisor to the Dune Board. Watt, Smith, Bettis and David are referred to in the Amended Complaint as the "Officer Defendants." ¶ 11. The Amended Complaint alleges that Watt and Smith were officers of Dune

from April 2007 through 2015. ¶¶ 7-8. Bettis is alleged to have joined Dune following the Goldking Acquisition (as defined herein) in May 2007 and remained employed through 2015. ¶ 9. David was allegedly employed at Dune from April 2007 through March 2009. ¶ 10.

13. Fourteen additional individuals are named as defendants based on having served on the Board of Directors of Dune. These persons are Alan Gaines, Alan D. Bell, Alexander A. Kulpecz, Jr., Emanuel R. Pearlman, Eric R. Stearns, John A. Brecker, Marjorie L. Bowen, Michael A. Keener, Richard M. Cohen, Robert A. Schmitz, Stephen P. Kovacs, Steven Barrenchea, Steven M. Sisselman, and William E. Greenwood (together with Watt, the "Director Defendants"). ¶¶ 12-27. Defendant Watt, who, as President and CEO of Dune also served on the Board is both an Officer Defendant and a Director Defendant. ¶ 26. The alleged terms of each Director Defendant are listed in the Amended Complaint.

14. Defendant David is not alleged to have had any association with Dune after March 2009. ¶ 10.

15. Defendants Alan Gaines, Alan Bell, Richard M. Cohen, Steven Barrenchea, Steven M. Sisselman, and William E. Greenwood are not alleged to have had any association with Dune after January 2012. ¶¶ 12-13, 20, 23-25.

c. **The Allegations**

16. The Trustee's allegations can be summarized as follows:

**Alleged Negligence In Connection with the Goldking Acquisition**

17. At the core of the Amended Complaint is the allegation that Defendants are responsible for alleged errors in the consummation of an agreement by Dune to acquire Goldking

Energy Corporation ("Goldking").[4] The acquisition (the "Goldking Acquisition") was an allegedly a tremendous blunder. Having caused Dune to acquire Goldking, Defendants were allegedly unable to overcome the difficulties that followed and made numerous allegedly bad decisions in their inadequate efforts to do so. ¶¶ 30-36.

18. The Amended Complaint alleges that in 2007, Dune acquired Goldking for total consideration in the amount of $320.5 million. ¶ 29. The acquisition was allegedly accompanied by "mind-boggling blunders" involving the alleged failure to take into account and avoid the consequences of environmental risks involving the properties formerly operated by Goldking. ¶¶ 30-36. Due to what were allegedly failures in due diligence and the exercise of due care, Dune allegedly inherited environment liabilities associated with "a brackish water oil and gas field that had a 'Mystery Sheen' on it." ¶ 30. The Amended Complaint asserts that the amount of these liabilities "may be upwards of $50 million." ¶ 43. Although Dune continued in operation for seven years after the Goldking Acquisition, the Amended Complaint alleges that this acquired liability "likely caused Dune to be insolvent immediately following the closing of the transaction." ¶ 31.

19. The Amended Complaint attributes the allegedly disastrous Goldking Acquisition to Defendants' undue reliance on disclosures by Goldking management. ¶ 35. Environmental consultants hired by Dune likewise allegedly placed undue reliance on Goldking management in

---

[4] The Amended Complaint appears to distinguish between the decision to acquire Goldking (which is not the object of the allegations) and consummating the acquisition (which is alleged to have been accompanied by negligence). See, e.g., ¶ 30. Watt and Smith, both Officer Defendants, were not even employed by Dune when the agreement was signed. See ¶ 29 (agreement effective April 13, 2007); Decl. of John F. Higgins in Supp. of Defs.' Mot. to Dismiss Pl.'s First Am. Original Pet. (the "Higgins Decl."), Ex. B [Dune 8-K, filed Apr. 18, 2007] (attaching employment agreements of James A. Watt and Frank T. Smith, Jr. dating their employment as of April 17, 2007, and disclosing that the agreement to acquire Goldking was signed on April 16, 2007). The Goldking Acquisition was entered into by Dune rather than any of its subsidiaries. Higgins Decl., Ex B at EX-99.1. The Court may take judicial notice of these filings. See Xtreme Power Plan Trust v. Schindler (In re Xtreme Power Inc.), 563 B.R. 614, 630-31 (Bankr. W.D. Tex. 2016) (courts may take judicial notice of documents required to be filed with a governmental organization, such as the SEC, on a motion to dismiss).

assessing the environment risks. Id. Defendants allegedly acted negligently in rapidly consummating the acquisition with insufficient time for due diligence. ¶ 32.

20. It is alleged that following the acquisition, the Goldking assets did not perform in accordance with expectations. ¶ 37. According to the Amended Complaint, Defendants then failed to mitigate the situation and instead, allegedly, made it worse through poor decisions and incompetence. ¶ 38. Following the Goldking Acquisition, Dune obtained financing from the Bank of Montreal ("BMO") in 2011. ¶ 38. Allegedly, in connection with this financing, certain unspecified Defendants provided BMO with "questionable certificates" that supposedly understated Dune's liabilities and overstated the value of its oil reserves. Id.

**Alleged Mismanagement of Environmental Liabilities from the Goldking Acquisition**

21. The Amended Complaint further faults Defendants for their alleged failure to resolve the issues caused by the Goldking environmental liabilities. The Amended Complaint acknowledges that these issues were raised on the board level "on numerous occasions," but asserts that the best Defendants could manage was a "band-aid approach," or "to restructure some limited liabilities." ¶¶ 40, 44.

22. The Amended Complaint notes Defendants' efforts to dispute and mitigate Dune's financial liability for environmental remediation on sites acquired in the Goldking Acquisition. ¶¶ 78, 83, 85. According to the Amended Complaint, pending resolution of the appropriate remediation measures, the Director Defendants sought to avoid public disclosure of the potential future remediation costs. ¶ 87. In December 2011, Dune was "successful" in refinancing. ¶ 88.

23. The alleged inability or failure of Defendants to understand the "true extent of the environmental liabilities" supposedly clouded the subsequent course of Dune "during the

duration of the company's post-Goldking history, which ended with Dune's bankruptcy filing on March 8, 2015." ¶ 41.

**Dune's Reserves Are Allegedly Inflated**

24. The Amended Complaint states that through 2014, Dune "consistently received mid-year reserve audits from DeGolyer and MacNaughton," a leading independent consulting firm focused on the petroleum industry. ¶ 39. These "third-party reserve audits" were supplemented by Dune consistent with "a fairly common industry practice that was probably required by the Debtors' financial auditors." Id.

25. Although no Defendant is identified as having participated, "Dune" is alleged to have artificially inflated its reserve figures by selecting wells to drill that would enhance their reportable reserves and "created the financial illusion of value where no real value existed." ¶ 52.

26. During 2012 and 2013, "Dune" allegedly made ill-advised business decisions including (a) making investment decisions in 2012 and 2013 on "sub-par industry decision matrices," (b) failing to go "non-consent" based on their contractual rights where Dune was not the operator of certain wells, and (c) "participating in high-risk exploration drilling" where they could ill-afford the costs of that drilling. ¶ 52.

**Alleged Board of Directors "Dysfunction"**

27. The Amended Complaint alleges that in December 2011, Dune underwent a restructuring of some of its liabilities. ¶ 44. According to the Amended Complaint, the 2011 restructuring placed the "then second lien holders" in control of Dune's Board of Directors. Id. Two new directors are asserted in the Amended Complaint to have been "hired" in April 2013. ¶ 98. One of these, Defendant Brecker, is identified as having been nominated for consideration by Strategic Value Partners LLC, an investment firm that managed Strategic Value Special

Situation Fund, L.P., alleged to be Dune's largest shareholder. ¶ 98. The Board, allegedly composed of "agents of various constituents with largely differing interests and therefore ideas" was allegedly dysfunctional and incapable of recognizing the scope and importance of Dune's environmental liabilities. ¶¶ 46-47; see also ¶¶ 99-100.

28. The Amended Complaint quotes extensively from various emails supposedly demonstrating Board "dysfunction" and "incredible friction" between the Director Defendants and the Officer Defendants. ¶ 104. For example, an email allegedly written by Defendant Watt to fellow board member Marjorie Bowen expresses apparent concern about different views of the different constituencies and expresses the hope that the company will be able to obtain clear shareholder direction about the strategy for moving forward. ¶ 102.

29. The Amended Complaint directs numerous allegations to "Dune" and generally lumps all Defendants in a single group for purposes of pleading. Individualized allegations addressed to certain Defendants are thus both sparse and vague. For example, it is alleged that Defendant Schmitz, a former Board member, "appears to have undertaken executive power without full Board authority." ¶ 106. The alleged *ultra vires* activities consisted of Schmitz's "efforts to speak to [Dune's] shareholders without advising the company's executives, to intervene with [Dune's] investment bankers, to require the CEO and the Board committees to report to him individually, and in other ways control the decisions of management." ¶ 236. No specific harm, injury or damage is attributed to any of the allegedly *ultra vires* conduct of Schmitz.

**Multiple Offers Are Alleged to Have Been Rejected**

30. In 2012, Dune engaged in preliminary negotiations with a company now known as EPL Oil and Gas, Inc. ("EPL") for EPL to purchase Dune. ¶¶ 42, 110-125. According to the Amended Complaint, the negotiations stalled due to the Board's assessment that the

consideration being offered was inadequate. ¶ 49. The Board is alleged to have breached its fiduciary duty of care "by failing to appropriately consider" an offer allegedly made by EPL. ¶ 50. During this same period, the Director Defendants are alleged to have instructed Watt that the company would respond in a similarly negative fashion to expressions of interest at similar price levels "for the immediate future." ¶ 51.

**Management Allegedly Pursues Self-Interested Transactions**

31. In the beginning of 2014, the investment banking firm Perella Weinberg Partners was hired by Dune to explore opportunities for a sale of all or parts of its business. ¶ 53. The Officer Defendants are alleged to have been motivated to pursue a sale of Dune to Eos Petro "with the understanding that they would be retained as management." ¶ 134. Contradictorily, the Trustee alleges that the Officer Defendants were "well aware" that Eos Petro allegedly "clearly lacked the financial wherewithal to close a transaction." ¶ 129. Similarly, Dune is alleged to have expended considerable time in discussions with Shoreline, another potential buyer, which was also interested in retaining the current Dune management. ¶ 137.[5]

32. The Officer Defendants are also alleged to have reached a "side deal" with Eos Petro in the event Dune was sold to a different company. ¶ 56. This alleged "side deal" would result in certain of the Officer Defendants resigning from Dune and accepting employment at Eos Petro as a new corporate team. ¶¶ 138-139.

**Other Potential Transactions Are Not Pursued**

33. Defendants are alleged to have failed to consummate other potential transactions that the Trustee contends would have yielded more consideration than what was ultimately

[5] It is unclear if the allegations regarding Shoreline are made against the Officer Defendants, the Director Defendants, or both. Paragraph 137 specifies the Directors, but states that the Directors were engaged in the discussions "for the purposes of retaining their managerial positions in the new firm." As a result it appears that this section may intend to plead that the Officers, not the Directors, engaged in those discussions.

realized upon the sale of Dune's assets in bankruptcy. ¶¶ 141, 143. The Amended Complaint refers to a presentation was prepared by PWP titled "Overview of M&A Proposals," ¶ 59 n.22 (the "PWP Presentation"),[6] indicating that an entity known as Whitney Oil and Gas, LLC ("Whitney"), made an offer of $30 million for Dune's Garden Island Bay and Bateman Fields properties and that these properties were sold during bankruptcy to a Whitney affiliate, Trimont Energy, LLC "for a single dollar." ¶ 59. The PWP Presentation shows that the pre-bankruptcy Whitney offer was a cash-for-assets deal (not involving the assumption of liabilities). ¶¶ 58 n.22, 59; PWP Presentation. In stark contrast, the purchase of the properties in bankruptcy required the buyer to assume extensive liabilities, including, without limitation, environmental liabilities, tax liabilities, well-plugging, and cleanup obligations. See ¶ 59, n.23.[7] Similarly, the Trustee identifies a pre-bankruptcy offer of $70 million for other assets, noting that these assets also sold for $1 in the bankruptcy. ¶ 141. Yet the Trustee neglects to mention the related absolute assumption by White Marlin Oil and Gas Company LLC of environmental and other liabilities of the seller. ¶ 141 n. 80.[8]

34. Finally, the Officer Defendants were alleged to have failed to consider an offer from Morgan Stanley because the Trustee contends they were unwilling to make personal investments in Dune demanded by Morgan Stanley as a condition of its offer. ¶ 144.

---

[6] Higgins Decl., Ex H. The Court can take judicial notice of this document as a document cited and referenced in the Amended Complaint and central to the Trustee's claims. See Xtreme Power Inc., 563 B.R. at 629-30 (taking judicial notice of a press release partially quoted in a complaint and central to plaintiff's claims). Although the names of the parties making the proposals were redacted on the version of this document produced to certain Defendants, a comparison of the terms of offers cited by the Trustee to those on the Presentation allow the Court to identify the offers referenced by the Trustee.

[7] Referencing Order (A) Approving Purchase Agreement (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, Interests, and (C) Granting Related Relief [Trimont Energy (NOW), LLC.], ECF No 378.

[8] Referencing Order (A) Approving Purchase Agreement (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, Interest, and (C) Granting Relief [White Marlin Oil and Gas Company LLC], ECF No. 379.

d. **The Claims**[9]

35. Counts 1-7 purport to state claims arising from breaches of fiduciary duties imposed on Defendants in their roles as directors and officers of Dune (the "Corporate Duty Claims"). They include the duties imposed by Delaware General Corporation Law (Counts 3-4) and the duties purportedly imposed by the Texas Business Organizations Code (Counts 1-2). They also include purported claims as to which applicable law is not identified, such as a claim for breach of the duty "Not to Make Improper Use of Information to Gain Improper Advantage" (Count 7). With one exception, Count 7, each of the Corporate Duty Claims is alleged against all Defendants in separate counts against the Director Defendants and the Officer Defendants.

36. Counts 8-14 and Count 17 purport to state claims under alternative legal theories arising from the same allegations as the Corporate Duty Claims (the "Alternative Theory Claims"). They include claims for "Corporate Waste" (Counts 9-10), claims for assumpsit or unjust enrichment (Counts 12-14), and a claim under the "Trust Fund Doctrine" (Count 8). With minor exceptions, each of the Alternative Theory Claims is alleged against all Defendants, either jointly or in separate counts against the Director Defendants and the Officer Defendants.

37. Count 18, the "Texas Securities Claim" alleges that three Officer Defendants, Watt, Bettis, and Smith, each violated Texas laws regarding the sale of securities by allegedly making reckless misrepresentations regarding Dune's lack of environmental liability or failing to disclose the environmental liability.

38. Counts 15 and 16 seek to "claw back" compensation paid to Defendants under federal and state bankruptcy law as constructive fraudulent transfers (the "Clawback Claims").

[9] Certain claims are asserted in paragraph 63 of the Amended Complaint and never referenced before or after that paragraph, such as "unlawful distributions." To the extent the Trustee seeks to maintain these claims that are not discussed further, they should be dismissed as no allegations have been made to support them and Defendants are not on notice of what these claims are or the basis for these claims.

## IV. Argument and Basis for Relief

### A. Pleading Standard

39. Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Fed. R. Bankr. P. 7012, provides for the dismissal of a claim for "failure to state a claim upon which relief can be granted." Rule 8(a)(2), which is made applicable to this proceeding by Fed. R. Bankr. P. 7008, requires a plaintiff to provide a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).

40. In order to survive a Rule 12 (b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009) (quoting Twombly, 550 U.S. at 555, 570). Dismissal is appropriate when a plaintiff fails to "raise a right to relief above the speculative level." Id. To plead facial plausibility, a plaintiff must set forth factual content that permits the courts to draw the reasonable inference that the defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard requires the complaint to include either direct allegation or facts from which properly drawn inferences support "every material point necessary to sustain a recovery." Torch Liquidating Trust v. Stockstill, 561 F.3d 377, 384 (5th Cir. 2009) (internal citations and quotations omitted).

41. While allegations in the complaint are assumed to be true, "threadbare recitals" of the elements of a cause of action that are supported by mere conclusory statements are insufficient. Iqbal, 556 U.S. at 678. "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Beavers v. Metro. Life Ins. Co., 566 F.3d 436, 439 (5th Cir. 2009); see also Iqbal, 556 U.S. at 678. Rather, legal

conclusions must be "supported by factual allegations." Iqbal, 556 U.S. at 679. Accordingly, a court should only liberally construe well-pleaded *facts* in favor of a plaintiff. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

**B. The Corporate Duty Claims and the Alternative Theory Claims Asserted Under Texas Law Should Be Dismissed**

42. Delaware law, and only Delaware law, governs the duties owed by Defendants in their capacities as directors and officers of Dune.[10] This is because Dune was a Delaware corporation[11] and Texas follows the "internal affairs rule," that the law of the state of incorporation governs the relationships between a company and its directors and officers. See Tex. Bus. Orgs. Code §§ 1.102 (codifying the internal affairs doctrine), 1.105 (defining internal affairs, *inter alia*, "as the rights, powers, and duties of its governing authority, governing persons, officers, owners, and members"); see also Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan, 883 F.2d 345, 354 (5th Cir. 1989) (holding that Texas statutory law mandated the application of Maryland corporate law to the internal affairs of a Maryland

[10] The Amended Complaint, not a model of clarity, defines Dune Energy Inc. and its two subsidiaries collectively as "Dune." Defendants, who were directors and officers of Dune Energy, are then alleged to be corporate directors and officers of "Dune" and the Amended Complaint does not thereafter refer to or distinguish between Dune Energy and the Dune subsidiaries. Since the positions alleged to have been held by Defendants correspond to the positions that they held with Dune Energy, the claims have been interpreted as having been alleged against Defendants in such capacities, and no claims appear to have been asserted against any Defendant other than as directors or officers of Dune Energy. Further, although the Amended Complaint directs all of its accusations at "Dune," the Amended Complaint states that it brings the action "to recover the enormous losses caused to Dune Energy Inc." ¶ 28. Finally, the various allegations described in the Amended Complaint relate to actions that could only have been taken by the parent company – such as negotiations over the sale of Dune – or to the Goldking Acquisition, which was entered into by Dune Energy Inc. See supra at ¶ 17 n.5. In any event, a parent company and its directors do not owe fiduciary duties to a subsidiary. See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., et al., 906 A.2d 168, 205 (Del. Ch. 2006). To the extent the Trustee nonetheless frivolously contends that one or more claims are claims asserted by the Dune subsidiaries, Defendants reserve the right to address such arguments on reply.

[11] Dune's original articles of incorporation, under its original name "IP Factory," were filed with the SEC as Exhibit 3.1 of its form 10-KSB filed on November 14, 2003 and state that Dune is incorporated under the laws of Delaware. See Higgins Decl., Ex. A. The amendment to the articles of incorporation changing the corporate name from "IP Factory" to "Dune Energy Inc." was filed as Exhibit 3.1.1 with the SEC attached to form 10-K filed on March 3, 2011. See Higgins Decl., Ex. E. The court may take judicial notice of the articles of incorporation on a motion to dismiss. See Xtreme Power Inc., 563 B.R. at 630-31 (taking judicial notice of an SEC filing on a motion to dismiss).

corporation); Pilepro, LLC v. Chang, 152 F. Supp. 3d 659, 674-75 (W.D. Tex. 2016) (following Sommers Drug to hold that Delaware law governed claim for breach of fiduciary duty owed to a Delaware company with a principle place of business in Texas); State Farm Mut. Auto. Ins. Co. v. Lopez, 156 S.W.3d 550, 557 n.7 (Tex. 2004).

43. Because Delaware law governs the Corporate Duty Claims and the Alternative Theory Claims, all Corporate Duty Claims brought under Texas law (Counts 1 and 2) should be dismissed in their entirety and all other Corporate Duty Claims and Alternative Theory Claims should be dismissed to the extent that they assert a claim under Texas law.

### C. The Corporate Duty Claims Fail to State a Claim for Breach of Delaware Fiduciary Duties

#### a. The Business Judgment Rule Bars the Trustee's Claims

44. Delaware applies the same fiduciary duties – the duty of care and the duty of loyalty[12] – to both directors and officers. See Gantler v. Stephens, 965 A.2d 695, 708-709 (Del. 2009). To determine whether directors and officers have met their fiduciary burdens, Delaware courts evaluate their conduct using one of three standards of review: the business judgment rule, enhanced scrutiny, and entire fairness. The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

---

[12] Some older Delaware cases list a third duty, the duty of good faith. See, e.g., Cede & Co. v. Technicolor, Inc., 634 A.2d 345. 361 (Del. 1993), decision modified on reargument, 636 A.2d 956 (Del. 1994) (listing the fiduciary duties as a triad, "good faith, loyalty, [and] due care") However more recent Delaware decisions have clarified that the duty of good faith is a subset of the duty of loyalty rather than an independent fiduciary duty. See Stone ex rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362, 370 (Del. 2006).

45. The business judgment rule applies unless the nature of the transaction requires a higher level of scrutiny. Parnes v. Bally Entm't Corp., 722 A.2d 1243, 1246 (Del. 1999). The business judgment rule applies to all of the conduct alleged against Defendants. Enhanced scrutiny is only applied in the context of a transaction in which there is a "change in control" of the corporation. See Paramount Commc'ns, Inc. v. QVC Network, Inc., 637 A.2d 34, 43 (Del. 1994). The "entire fairness" standard applies only when the majority of directors are interested in the challenged transaction. See Krasner v. Moffett, 826 A.2d 277, 287 (Del. 2003). No such interest has been alleged for a majority of the board for any challenged transaction.

46. The business judgment rule recognizes that "judges are poorly positioned to evaluate the wisdom of business decisions and there is little utility to having them second-guess the determination of impartial decision-makers." See Corwin v. KKR Fin. Holdings LLC, 125 A.3d 304, 313 (Del. 2015); see also Freedman v. Rest. Assocs. Indus., Inc., No. CIV.A. 9212, 1987 WL 14323, at *8 (Del. Ch. Oct. 16, 1987) ("[O]ne of the important reasons for the existence of the business judgment rule is the institutional incompetence of courts to pass upon the wisdom of business decisions.")

47. Under Delaware law, the only basis upon which a corporate officer may be found liable for conduct in respect of a challenged decision is that his or her conduct was in breach of a fiduciary duty. Plaintiffs have the burden to plead facts sufficient to rebut that presumption that in make a business decision, "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that action was taken was in the best interest of the company." Gantler v. Stephens, 98 A.2d 695, 705-6 (Del. 2009). Failing such a showing, the business judgment rule requires dismissal of the claim. See Cede & Co., 634 A.2d at 361. "[A]bsent an allegation of interestedness or disloyalty to the corporation, the business judgment rule prevents

a judge or jury from second guessing director decisions if they were the product of a rational process and the directors availed themselves of all material and reasonably available information." In re Citigroup Inc. S'holder Derivative Litig., 964 A.2d 106, 124 (Del. Ch. 2009); see also Brehm, 746 A.2d at 264 n.66 ("Courts do not measure, weigh or quantify directors' judgments.").

48. Both directors and officers are protected by the business judgment rule. See Cede & Co., 634 A.2d at 361; see also RSH Liquidating Trust v. Magnacca, 553 B.R. 298, 317 n.12 (Bankr. N.D. Tex. 2016) (recognizing that the business judgment rule protects officers but declining to dismiss claims on that basis because the officer failed to plead the business judgment rule in their motion to dismiss).

b. The Trustee's Allegations Fail to Plead a Breach of the Duty of Care

49. The Trustee has failed to plead an actionable breach of the duty of care against either the Director Defendants or the Officer Defendants. The making of substantively poor decisions is not actionable. In measuring due care, courts look only to the process and not the substance of a business decision. See Brehm, 746 A.2d at 264 ("Due care in the decisionmaking context is *process* due care only." (emphasis in original)). Furthermore, Delaware courts will not find a violation of the duty of care absent gross negligence. See Aronson, 473 A.2d at 812; Feeley v. NHAOCG, LLC, 62 A.3d 649 (Del. Ch. Ct. 2012) ("Gross negligence is the standard for evaluating breach of the duty of care." (citing Aronson, 473 A.2d at 812)). In total disregard of the business judgment rule and the requirement of pleading *gross* negligence, the Amended Complaint is a pointless exercise in asserting liability in reliance on allegedly poor decisions made by Defendants.

50. With regard to potential environmental liability associated with the Goldking Acquisition, Dune management commissioned a report prepared by an outside firm (Engelken &

Associates) to assess environment risks. See ¶ 35, n. 7. Indeed, the Amended Complaint quotes from the report itself, albeit in an apparent effort to undercut its findings. See id.[13] These allegations are fatal to the Trustee's claims of breach of due care. Under Delaware law, Dune's directors are "fully protected" from liability when they act in reliance on experts. See 8 Del. C. § 141(e) ("A member of the board of directors . . . shall, in the performance of such member's duties, be fully protected in relying in good faith upon the . . . reports or statements presented to the corporation by any . . . person as to matters the member reasonably believes are within such other person's professional or expert competence."); In re Citigroup S'holder Derivative Litig., 964 A.2d at 135 (holding that to survive dismissal in a due care case where an expert has advised the board in its decision-making process, the complaint must allege particularized facts showing that the Board's reliance was not in good faith).

51. In any case, and notwithstanding perfunctory references to process, the Trustee's Goldking allegations assert in essence that the Goldking Acquisition was a poor business deal. Similarly, the Trustee's allegations that the environmental liability was mismanaged once discovered essentially plead that Defendants should have made different choices in dealing with that liability.

52. The allegations that Defendants "rapidly consummated" the Goldking acquisition and gave insufficient time for due diligence do not overcome the presumptions of due care and reasonable reliance on expert reports to which Defendants are entitled under Delaware law. Further, this allegation of haste is contradicted by a review of the contractual provisions on

---

[13] The Trustee's allegation that the Engelken & Associates report was flawed is a claim the Trustee should have asserted against the Engelken & Associates. Defendants are not in possession of this report, but the section the Trustee quotes states that Engelken & Associates received a copy of a documented study on the area, contradicting the Trustee's baseless claim that this report "solely relied on the representation of Goldking's management." Amended Complaint ¶¶ 35-36.

which the Trustee relies. ¶ 32. These provided Dune only 21 days to assert environmental defects that would require a reduction in the purchase price.[14]

53. Similarly, the allegations that environmental liability was mismanaged amount to nothing more than essentially pleading that Dune was unsuccessful in resolving those liabilities prior to its bankruptcy. The facts pled in the Amended Complaint, shorn of the Trustee's baseless insinuations, support a simple inference: Defendants were attempting to limit Dune's liability for any environmental damage. See, e.g., ¶¶ 84-85, 87 (discussing attempts by Dune's management to reduce liability). Dune's management sought to overturn the finding that Dune was liable or, in the alternative, agree to the lowest-cost remediation measure that would satisfy Dune's liability. Id. Both actions are precisely in line with the value-maximizing mandate of the Officer Defendants. Allegations such as those involving the management of Dune's environmental liabilities, that assert no more than that corporate fiduciaries attempted to redress problems impacting the corporation, fail to plead a breach of the duty of care regardless of whether other conduct might have been more efficacious and so fail to state a cause of action.

54. Finally, no facts whatsoever are pled to support the Trustee's apparent theory that Defendants' breached their duties to Dune in connection with efforts to sell the company. The allegations that Dune improperly or ill-advisedly rejected opportunities to enter into favorable transactions are supported solely by pleading that consideration from those transactions would have been greater than the amounts ultimately received in later transactions. ¶ 58. The Trustee's claims amount to nothing more than second-guessing decisions made in real time based on later

[14] See Stock Purchase and Sale Agreement, Section 5.9(a)(1) (requiring Dune to deliver, in writing, details of any alleged environmental defect, a description of the defect, and the demanded purchase price adjustment within 21 days of the signing of the agreement). The Stock Purchase and Sale Agreement is attached to Dune's 8-K filed with the SEC on April 18, 2007. See Higgins Decl., Ex. B. The Amended Complaint admits the closing of the transaction took place on May 15, 2007 – well more than the 21 days Dune had to assert any purchase price reductions based on environmental defects. See ¶ 34.

transactions. See ¶¶ 141-143 (simply noting that two transactions were higher than the amounts realized in a bankruptcy sale, and that one transaction did not occur without alleging any terms of the transaction). Such claims are plainly barred by the business judgment rule. See Cede & Co., 634 A.2d 361 (business judgment rule protects all decisions that do not constitute a violation of fiduciary duties).

55. Similarly futile is the Trustee's allegation that a transaction which was contingent on management investing its own money was not pursued because Dune's management was unwilling to invest their personal funds. ¶ 145. Needless to say, the Officer Defendants were not required to make personal investments even where doing so would benefit the corporation.

56. The Trustee's other allegations of misconduct also fail to state a claim. "Dune," rather than any particular Defendant, is alleged to have "artificially increase[d] its balance sheet," to have invested in the wrong wells, to have incurred cost overruns and to have participated in "high-risk exploration drilling" when it could "ill afford the costs." ¶ 52. Actionable claims cannot be fabricated from this kind of nit-picking second-guessing. See, e.g., Freedman, 1987 WL 14323, at *8 (dismissing claim where plaintiff "failed utterly to offer any legal justification for the court's second-guessing" the business decision).

57. The Trustee's allegations of supposed overstatement of reserves add nothing to the legal sufficiency of the Amended Complaint because, among other reasons, as the Trustee alleges, Dune's reserves were audited by an independent auditor. ¶ 39; see 8 Del. C. § 141(e).

c. The Trustee's Allegations Fail to Plead a Breach of the Duty of Loyalty

58. The Trustee has also failed to plead facts in support any claim for a breach of the duty of loyalty. A potential violation of the duty of loyalty occurs where a director or officer appears on both sides of a transaction or receives a benefit not shared with shareholders generally. See Cede & Co., 634 A.2d at 362. To allege a breach of the duty of loyalty, the

plaintiff must plead facts showing that the claimed self-interest of the defendant was material enough that it would have affected the independence of judgment of a reasonable person in that position. Id. To find a violation of the duty of loyalty, it is necessary (but not sufficient) to find that the director or officer acted in bad faith. See Ritter, 911 A.2d at 369–70. Yet the Amended Complaint is entirely devoid of any such allegation regarding any Director Defendant. Its threadbare allegations against the Officer Defendants fail for the reasons described below.

59. As an initial matter, the Plaintiff has not even challenged the independence or disinterestedness of the members of the Dune board as it was composed at any time. See McMillan v. Intercargo Corp., 768 A.2d 492, 503 (Del. Ch. 2000) ("The presence of an unconflicted board majority undercuts any inference that the decisions of the [company] board can be attributed to disloyalty."). The Amended Complaint lacks a single allegation of any interest of any Director Defendant in opposition to Dune's interests at all, let alone the type of "material" interest the Trustee is required to plead to allege a breach of the duty of loyalty. See Cede & Co., 634 A.2d at 362. The closest the Trustee comes in the seventy-three pages of allegations in the Amended Complaint is the allegation that certain Director Defendants were appointees of specific equity holders, and those equity holders also were second lien lenders to Dune. ¶ 97. Nowhere in the Amended Complaint is there any explanation of how the Director Defendants' alleged control *by the shareholders of Dune* constitutes an interest of the Director Defendants in opposition to Dune's interest.[15] There is literally no conduct alleged to have been taken by any Director Defendant in the interest of any person or entity other than Dune.

---

[15] It is also unclear on what legal theory the Trustee could state a claim against the Directors or the Officers, as he attempts to do, for "failure to maintain an independent board of directors" when the shareholders of Dune, not the Directors and Officers, have the power to appoint directors. To the extent the Trustee seeks to state such a claim it should be dismissed.

60. The Amended Complaint is similarly bereft of any viable claim that an Officer Defendant breached a duty of loyalty. The Trustee alleges that the Officer Defendants pursued the Eos Petro transaction to assure that they would retain their employment. ¶ 134. Yet the Trustee also alleges that the Officer Defendants planned to quit Dune and go work at Eos Petro if Dune was instead sold to another firm. ¶ 56. Finally, the Trustee alleges that the Officer Defendants were "well aware" that "Eos Petro [] clearly lacked the financial wherewithal to close a transaction." ¶ 129. In other words, the Trustee pleads that the Officer Defendants pursued a transaction they were well aware could not close in order to keep their jobs if the transaction closed – a plain absurdity – and did so despite having the ability to secure another job if Dune was sold to a party that did not continue their employment. These contradictory allegations do not come close to satisfying the pleading burden of showing that these circumstances would have affected the independence of judgment of a reasonable person in that position, a necessary requirement to plead a violation of the duty of loyalty. See Cede & Co., 634 A.2d at 362.

61. Count 7 is titled "Breach of Duty Not to Make Improper Use of Information to Gain Improper Advantage." Despite this title, which does not correspond to any conventional claim, Count 7 appears to be an attempt to assert a traditional corporate opportunity claim.[16] ¶ 172 (reciting the duty of a corporate officer to offer a corporate opportunity to the corporation rather than taking advantage of it for personal gain). Count 7, however, fails to identify any opportunity that was usurped or misappropriated by Defendants. The essential elements of such a claim, namely that a corporate opportunity existed, and that the officer exploited the corporate opportunity are missing from Plaintiff's allegations. See Broz v. Cellular Info. Sys., Inc., 673

[16] To the extent the Trustee seeks to argue that Count 7 alleges anything other than a corporate opportunity claim, it should be dismissed for failing to give notice of the claim alleged.

A.2d 148, 155–57 (Del. 1996) (to state a corporate opportunity claim, the alleged opportunity must be within a company's line of business, the company must have an interest or expectancy in the opportunity, and the corporate officer must actually take the opportunity). The Amended Complaint alleges only that the Officer Defendants considered transitioning to Eos Petro – not that it occurred. The Trustee even admits in his Amended Complaint that the supposed "side deal" with Eos Petro would only have been implemented if Dune were sold to another firm. See ¶ 56 ("[T]he Officer Defendants prearranged for a side deal that would provide for their transition to Eos *in the event that Dune was sold to another firm*." (emphasis added)). Further, the opportunity allegedly presented to the Officer Defendants – employment at Eos Petro – is not a corporate opportunity that should have been presented to Dune. What was a corporate opportunity – and was presented to Dune – was Eos Petro's offer to purchase Dune. This offer led to the execution of a signed merger agreement.

d. The Director Defendants Are Exculpated from Liability for Breaches of the Duty of Care

62. Even if the facts alleged by the Trustee were sufficient to allege a breach of the duty of care (and they are not), such allegations would fail for the entirely independent reason that, as authorized by Section 102(b)(7) of the Delaware Corporation Law, the articles of incorporation of Dune exculpate directors from liability for violations of the duty of care.[17] On a motion to dismiss, all claims for damages based on a breach of the duty of care must be

[17] Dune's original articles of incorporation, under its original name "IP Factory", were filed with the SEC as Exhibit 3.1 of its form 10-KSB filed on November 14, 2003. See Higgins Decl., Ex. A. The amendment to the articles of incorporation changing the corporate name from "IP Factory" to "Dune Energy Inc." was filed as Exhibit 3.1.1 with the SEC attached to form 10-K filed on March 3, 2011. See Higgins Decl., Ex. E._ The exculpation clause reads "FIFTH: The personal liability of the directors of the corporation is hereby eliminated to the fullest extent permitted by the provisions of paragraph (7) of subsection (b) of ss.102 of the General Corporation Law of the State of Delaware, as the same may be amended and supplemented. No amendment to or repeal of this Article shall apply to or have any effect on the liability of any director of the corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal." The court may take judicial notice of these documents. See Xtreme Power Inc., 563 B.R. at 630-31.

dismissed against directors of a Delaware corporation who are protected by an exculpation clause. See McMillan, 768 A.2d at 501-02 ("The effect of the exculpatory charter provision is to guarantee that the defendant directors do not suffer discovery or a trial simply because the plaintiffs have stated a non-cognizable damages claim for a breach of the duty of care."); RSH Liquidating Trust, 553 B.R. at 308 (claims alleging a breach of the duty of care against directors of a Delaware corporation that are protected by an exculpation clause must be dismissed). This Court may take judicial notice that Dune's articles of incorporation contain an exculpation clause. See Xtreme Power Inc., 563 B.R. at 630-31 (taking judicial notice of an SEC filing on a motion to dismiss). In light of Section 141(e) of the Delaware General Corporations Law and the exculpation clause found in Dune's articles of incorporation, Dune Director Defendants may be held liable for damages to Dune only if they are found to have engaged in "bad faith, self-interested, or other intentional misconduct *rising to the level of a breach of the duty of loyalty*." McMillan, 768 A.2d at 502 (emphasis added). Accordingly, all claims that allege merely a breach of the duty of care against the Director Defendants should be dismissed on this independent basis.

63. As noted s*upra,* the Trustee's Goldking allegations fail for the further reason that under Delaware law, Dune's directors are "fully protected" from liability when they act in reliance on professional or other experts. 8 De. C. § 141(e) ("A member of the board of directors . . . shall, in the performance of such member's duties, be fully protected in relying in good faith upon the . . . reports or statements presented to the corporation by any . . . person as to matters the member reasonably believes are within such other person's professional or expert competence."); In re Citigroup S'holder Derivative Lit., 964 A.2d at 135 (holding that to survive dismissal in a due care case where an expert has advised the board in its decision-making

process, the complaint must allege particularized facts showing that the Board's reliance was in bad faith). The Goldking allegations assert, in essence, that the Dune board failed to accurately assess and respond to the risk of environmental liability. Under Delaware law, the Director Defendants were entitled to rely on the advice of an outside consultant to address this kind of risk.

e. All Claims Based On Alleged Misconduct Prior To March 8, 2012 Are Time-Barred

64. As a separate and independent ground for dismissal, all claims asserted by the Trustee must be dismissed as time-barred to the extent that they accrued before March 8, 2012.

65. Because Dune Energy is a Delaware corporation, the laws of Delaware, including Delaware's three-year statute of limitations and applicable tolling principles, govern the Trustee's Corporate Duty claims against Dune's former directors and officers. See Pilepro, 152 F. Supp. 3d at 674-75, 680 n.20 (finding (i) that Delaware law governed plaintiff's claim that defendants breached a fiduciary duty owed to a Delaware limited liability company and (ii) that Nevada's three year statute of limitation applied to plaintiff's claim that defendants had breached a fiduciary duty to a Nevada corporation); West v. Avery (In re Noram Resources, Inc.), Adv. No. 10-03701, 2011 WL 5357895, at *6, 15-16 (Bankr. S.D. Tex. Nov. 7, 2011) (applying Alberta statute of limitation and tolling principles to plaintiff's claim for breach of fiduciary duty against the directors of an Alberta corporation); Kaye v. Dupree (In re Avado Brands, Inc.), 358 B.R. 868, 881 (Bankr. N.D. Tex. 2006) (applying Georgia's statute of limitations to trustee's claims for breach of fiduciary duty against the former directors and officers of a Georgia corporation).

66. Accordingly, the statute of limitations applicable to the Corporate Duty Claims is three years. See 10 Del. C. § 8106; see also Fike v. Ruger, 754 A.2d 254, 260 (Del. Ch. 1999)

("Under Delaware law, a three-year statute of limitations applies to claims for … fiduciary duty"). Under Delaware law, "[a] cause of action accrues under this section at the time of the wrongful act, 'even if the plaintiff is ignorant of the cause of action.'" Krahmer v. Christie's Inc., 903 A.2d 773, 778 (Del. Ch. 2006).

67. Although the Trustee asserts that the applicable statutes of limitation are tolled by the adverse domination doctrine, that doctrine is not recognized in Delaware because shareholders have the ability to bring a derivative action when a board wrongfully fails to pursue a claim. See George L. Miller, v. Kirkland & Ellis LLP (In re: IH 1, Inc.), No. 09-10982 (LSS), 2016 WL 6394296, at *18 (Bankr. D. Del. Sept. 28, 2016); see also Marvel Entm't Grp., Inc. v. MAFCO Holdings, Inc. (In re Marvel Entm't Grp., Inc.), 273 B.R. 58, 77 (D. Del. 2002).

68. While the Trustee has also asserted that the expiration of the claims was tolled pending discovery, he has failed to plead any facts supporting the application of the discovery rule. Delaware has an extremely high standard for application of the discovery rule and will apply it only when "facts at the heart of the claim are so hidden that a reasonable plaintiff could not timely discover them." AM Gen. Holdings LLC v. The Renco Grp., Inc., C.A. Nos. 7639-VCS, 7668-VCS, 2016 WL 4440476, at *13 (Del. Ch. Aug. 22, 2016).[18] When the discovery rule applies, the statute of limitations is tolled only until the claimant is on inquiry notice of the claim and the claimant bears the burden of proving the time it took was appropriate. Id. Here, the Trustee apparently hopes to invoke the discovery rule through the bare assertion that the information at issue was not reasonably discovered until the Trustee was appointed. See, e.g., ¶

[18] Texas imposes an even higher standard: both that the nature of the injury is "inherently unknowable" *and* the injury itself must be "objectively verifiable." HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998). The applicability of the discovery rule is determined categorically in Texas: even if a particular injury might not have been discovered, the discovery rule will not apply if that type of injury is one that is typically discoverable by the exercise of reasonable diligence. Id. (holding negligent misrepresentation and breach of contract are not the type of claims that support discovery rule tolling).

4. Furthermore, this Court can and should take notice that the claim at the heart of many of the Trustee's unfounded allegations – that Dune had been found liable for environmental liability acquired in the Goldking Acquisition – was publicly disclosed in Dune's SEC filings during the applicable statute of limitations period, a fact that completely destroys any argument that any discovery rule tolling applies.[19]

69. As a result of the three-year statute of limitations, all Corporate Duty Claims relating to conduct before March 7, 2012 (three years before the Petition Date) are certainly barred by the applicable statute of limitations.[20] Specifically, this Court should dismiss (a) all allegations related to the Goldking Acquisition, completed in May 2007, which is alleged to have caused Dune to become insolvent (¶¶ 29, 40, 80, 84); (b) all allegations regarding mismanaging environmental liabilities resulting from the Goldking Acquisition (¶¶ 78-89 (all specific factual allegations regarding mismanagement of environmental liabilities allege conduct before March 7, 2012)); and (c) all allegations regarding the rejection of the EPL Offer, which occurred on February 16, 2012 (¶ 48).

70. The Amended Complaint admits that certain directors were not associated with Dune during March 2012 or beyond, specifically Amiel David, Alan Gaines, Alan Bell, Richard M. Cohen, Steven Barrenchea, Steven M. Sisselman, and William E. Greenwood (the "Pre-2012

[19] Dune's 10-Q filed on November 3, 2009, reads "In connection with the acquisition of Goldking, the Company inherited an environmental contingency which after conducting its due diligence and subsequent testing believes is the responsibility of third parties. **However, federal and state regulators have determined Dune is the responsible party for clean up of this area**." Higgins Decl, Ex. C (emphasis added). This filing disclosed that Dune had been found liable for the "mystery sheen" mere months after the determination was made, on August 28, 2009. ¶ 33 n.5. This Court may take judicial notice of SEC filings on a motion to dismiss. See Xtreme Power Inc., 563 B.R. at 630-31.

[20] Because the Trustee is not a bankruptcy trustee under the Bankruptcy Code, he may only claim the benefit of Section 108(a) tolling if he is an agent, rather than an assignee, of Dune as debtor-in-possession. See Motor Carrier Audit & Collection Co., a Div. of Delta Traffic Serv., Inc. v. Lighting Prods., Inc., 113 B.R. 424, 426–27 (N.D. Ill. 1989) (claims assigned to a third party for consideration do not qualify for the benefits of section 108). However, because the Trustee's specific status is a factual question rather than a pure legal question, for the purposes of this motion Defendants have presumed that Section 108(a) tolling applies. Defendants do not concede that application of Section 108 to this case is appropriate and reserve the right to contest its applicability at a later time.

Defendants"). ¶¶ 10, 12-13, 20, 23-25. All Corporate Duty Claims against the Pre-2012 Defendants should be dismissed for failure to state a claim because, among other reasons, all such claims are time-barred.

**D. The Alternative Theory Claims (Counts 8-14, 17) Fail To State a Claim**

71. None of the Trustee's Alternative Theory Claims are viable: they either rely on legal theories that are not recognized under applicable law, require allegations the Trustee has not made and cannot make, or merely allege alternative damages theories for the Trustee's Corporate Duty claims. Each should be dismissed against all Defendants.

72. The Trustee's negligence claim, Count 11, should be dismissed because simple negligence is not actionable under Delaware law by a corporation against its directors and officers for conduct in their official capacities. Under Delaware law, the business judgment rule protects directors and officers for suits alleging mere negligence because, for a corporation to state a claim against its directors and officers, it must plead a violation of the duty of care or the duty of loyalty. See Cede & Co., 634 A.2d at 361 (business judgment rule protects all decisions that do not constitute a violation of the directors' and officers' fiduciary duties). To find a violation of the duty of care it is necessary to plead gross negligence, rather than simple negligence. See Aronson, 473 A.2d at 812 . Accordingly, Count 11 fails to state a claim and should be dismissed.

73. Similarly, the Trustee's Trust Fund Doctrine claim, Count 8, is not a recognized basis for the Trustee to bring a claim. The Trust Fund Doctrine, in states that recognize it, allows *creditors* of an insolvent corporation to bring an action alleging a breach of fiduciary duty against directors and officers. See, e.g., Aurelius Capital Master, Ltd. v. Acosta, No. 3:13-CV-1173-P, 2014 WL 10505127, at *4 (N.D. Tex. Jan. 28, 2014). Yet the Trustee alleges that he holds only the claims of Dune itself – not claims of creditors and so he does not hold a Trust

Fund Doctrine claim. ¶ 151.[21] In addition, Delaware law, which governs here, does not recognize the Trust Fund Doctrine. See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 101 (Del. 2007); see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill, 561 F.3d 377, 385 (5th Cir. 2009). Instead, under Delaware law, creditors do not have a direct claim for breach of fiduciary duty. Instead, they may bring a *derivative* action alleging breach of fiduciary duty on behalf of the corporation itself[22] – but those claims are the claims the Trustee has brought in his Corporate Duty Claims. Accordingly, Count 8 should be dismissed because the Trustee does not have standing and because Delaware does not in any event recognize a creditor claim for breach of fiduciary duty.

74. Counts 9 and 10, purporting to state claims for corporate waste, should be dismissed because the facts alleged do not approach those that could support a claim of corporate waste. Under Delaware law, directors waste corporate assets when they approve a decision that cannot be attributed to "any rational business purpose." Calma on Behalf of Citrix Sys., Inc. v. Templeton, 114 A.3d 563, 590 (Del. Ch. 2015) (dismissing conclusory allegations of waste on the grounds that they could not rise to the high levels required for waste). To state a claim for waste, plausible allegations must be made that the directors "'authorize[d] an exchange that [was] so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration,' *i.e.*, the transfer of corporate assets was a

[21] The Amended Complaint numbers two sets of paragraphs 145-151. See Amended Complaint at pp. 55-57. This citation is to the first paragraph 151, on page 56.

[22] These claims are limited as Delaware has rejected the notion that fiduciary duties are owed to creditors at the expense of the corporation and its shareholders, even in the face of insolvency. See Gheewalla, 930 A.2d at 101. Even when a company is insolvent, under Delaware law its directors are permitted to embark upon a business strategy that requires incurring additional debt while retaining the protection of the business judgment rule. See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., et al., 906 A.2d 168, 205 (Del. Ch. 2006). Similarly, Delaware does not recognize deepening insolvency as a valid claim and plaintiffs may not simply recharacterize a deepening insolvency claim as another type of claim. See In re Radnor Holdings Corp., 353 B.R. 820, 842 (Bankr. D. Del. 2006).

'gift.'" Id. "A claim of waste will arise only in the rare 'unconscionable case where directors irrationally squander or give away corporate assets.'" In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 74 (Del. 2006). The Trustee's allegation that Defendants committed waste by "overpaying" for the Goldking Acquisition or that Defendants used resources pursuing transactions that allegedly "were not closable" cannot come close to meeting the standard that the transaction was a "gift" without any rational business purpose. ¶¶ 184, 187. Likewise, the Trustee's allegation that Dune paid its directors and officers for their services also cannot meet this high standard: the Trustee has not alleged that Defendants provided no services (nor can he) to turn the compensation they received for those services into a "gift." Id. Accordingly the corporate waste claims should be dismissed.

75. The Trustee's assumpsit[23] and unjust enrichment claims, Counts 12-14, should be dismissed because they are merely alternative damages theories for the Trustee's Corporate Duty Claims and cannot survive the dismissal of those claims. Under Delaware law a plaintiff's failure to state a claim for breach of fiduciary duty forecloses a claim for unjust enrichment based on the same conduct. See Monroe Cnty. Emps.' Ret. Sys. v. Carlson, Civ. A. No. 4587-CC, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010) (dismissing plaintiff's unjust enrichment claim because it "depend[ed] on the success of the breach of fiduciary duty claim," which was also dismissed for failure to state a claim); In re Lear Corp. S'holder Litig., 967 A.2d 640, 657 (Del. Ch. 2008) (dismissing plaintiff's unjust enrichment claim because, "for the same reasons as the complaint fails to plead facts supporting an inference that [defendant] was knowingly

[23] Assumpsit does not appear to be a modern cause of action in Delaware and has instead been replaced by modern doctrines of unjust enrichment and *quantum meruit*. See Ramunno v. Persimmon Lane Apartments, Civ. A. No. 80-102-1976, 1976 WL 146604, at *2 (Del. Com. Pl. July 8, 1976) (noting that unjust enrichment was maintainable at common law as an action of assumpsit, and permitting an action of unjust enrichment at law to go forward); Adams v. LeCompte, No. 1220 CIV.A. 1975, 1977 WL 182079, at *1 (Del. Super. Ct. Apr. 14, 1977) (noting that *quantum meruit* theory was cognizable under assumpsit).

complicit in any breach of fiduciary duty, it also fails to support an inference that [defendant] was engaged in some form of wrongdoing"). Thus the unjust enrichment and assumpsit claims must be dismissed.

76. Finally, the *ultra vires* claim against Robert Schmitz, Count 17, should be dismissed because, among other reasons, the Trustee has failed to allege any harm that allegedly resulted from Mr. Schmitz's allegedly *ultra vires* actions and instead alleges that "[t]he precise scope of his liability will necessarily wait until discovery unfolds." ¶ 106. The Trustee cannot defer pleading an essential element of any tort – damages – until after discovery. See Mergenthaler v. Asbestos Corp. of Am., Inc., 534 A.2d 272, 276 (Del. Super. Ct. 1987) (damage or loss is an essential element of a tort claim); see also Molnar v. Wibbelt, 789 F.2d 244, 250-51 (3d Cir. 1986) (affirming dismissal of claim for breach of fiduciary duty for failure to allege damages); Hall v. Dorsey, No. 96C-06-045, 1998 WL 960774, at *2 (Del. Super. Ct. 1998) (explaining that a claim for negligence cannot be sustained in the absence of damages because damages is an element of a claim for negligence). It is particularly egregious here, where the Trustee has possession of the books and records of Dune and has had ample time to review those documents (as his Amended Complaint is littered with Dune internal emails), for the Trustee to attempt to defer meeting his pleading obligation until after discovery. This attempt should be denied, and Count 17 dismissed.

**E. The Texas Securities Claim Fails To State a Claim**

77. The Trustee's Texas Securities Claim must be dismissed for lack of standing. Texas securities laws create remedies on behalf of persons defrauded in connection with the sale of a security. See Tex. Bus. & Com. Code § 27.01(b) ("A person who makes a false representation or false promise . . . is liable to *the person defrauded* for actual damages."

(emphasis added)).[24] The Trustee however may only assert those claims that belong to Dune. ¶ 151[25] (alleging that the Trustee holds all claims "derivative of or from the Debtors that is Estate Property"); see also Plan § 1.76. Dune cannot have been a "person defrauded" by its own alleged misrepresentations or wrongful omissions regarding its environmental liabilities. Nor can it assert the claims of third parties who purchased securities from Dune. See Torch Liquidating Trust v. Stockstill, No. 07-133, 2008 WL 696233 at *6 n.4 (E.D. La. Mar. 13, 2008) aff'd, 561 F.3d 377 (5th Cir. 2009) (observing that "Litigation Trusts", such as the Dune Plan Trust, "do not have standing to pursue direct claims of creditors.")

78. Even if Dune, as the issuer of securities could, in transactions involving its own securities, be the "person defrauded" for purposes of Texas securities laws, these claims would fail due to the failure to plead any injury to Dune. True, the Trustee conclusory asserts that damage *to Dune* permits him to bring the Texas Securities Claim. ¶ 240 (alleging that certain Defendants "made representation recklessly regarding the lack of environment liability or failed to disclose same, causing great harm to Dune as to be determined at trial.") (emphasis added). Yet nowhere in the Amended Complaint can a single factual allegation be found to support injury to Dune from transactions in securities.

---

[24] Further, this Court may take judicial notice of facts that prove that the Trustee's allegations are flatly contradicted by contemporaneous disclosures because those disclosures were filed with the SEC. The Trustee claims that Watt, Bettis, and Smith "made representations recklessly regarding the lack of environmental liability or failed to disclose same" despite knowledge that Dune had been designated the responsible party for the "mystery sheen" acquired in the Goldking Acquisition. ¶ 240. Yet Dune's SEC filings disclosed within months of the liability determination in August 2009 and well before every specific securities sale alleged that Dune had been determined to be the responsible party for the environmental damage related to the Goldking Acquisition. Dune's 10-Q filed on November 3, 2009 reads: "In connection with the acquisition of Goldking, the Company inherited an environmental contingency which after conducting its due diligence and subsequent testing believes is the responsibility of third parties. **However, federal and state regulators have determined Dune is the responsible party for clean up of this area**." Higgins Decl., Ex. C (emphasis added). Subsequent SEC filings, such as Dune's 10-K filed on March 25, 2010, repeat this disclosure. See Higgins Decl., Ex. D.

[25] The Amended Complaint numbers two sets of paragraphs 145-151. See Amended Complaint at pp. 55-57. This citation is to the first paragraph 151, on page 56.

**F. The Clawback Claims Should Be Dismissed as Against the Director Defendants and Amiel David**

79. While the Clawback Claims are entirely without merit, the Defendants at this time seek only dismissal of the Clawback Claims as against the Director Defendants and Amiel David, and to the extent they seek to recover compensation received by the Defendants earlier than March 8, 2011.

80. Count 15 and 16 seek avoidance of transfers of compensation to Defendants as purported constructive fraudulent transfers under Section 544(b) and 548(a)(1)(B) of the Bankruptcy Code. Claims asserted by the Trustee pursuant to Section 544(b) are based on Texas law (Count 15) and Delaware law (Count 16). Under both Delaware and Texas law, the statute of limitations on avoiding transfers is four years after the transfer was made. See 6 Del. C. § 1309; Texas Bus. & Com. Code § 24.010. Any claim based on a transfer made earlier than March 8, 2011, four years before the Petition Date, would have been time-barred on the Petition Date.[26] As a result, Counts 15 and 16 should be dismissed in their entirety against defendant Amiel David, who the Trustee admits was only employed by Dune through March 2009. ¶ 10. Further, Counts 15 and 16 should be dismissed to the extent they seek to avoid compensation paid to any other Defendant before March 8, 2011.

81. The Clawback Claims, to the extent they seek to avoid board fees paid to the Director Defendants, should be dismissed because they were in the ordinary course of business and there is no allegation they were excessive. See In re Midway Games Inc., 428 B.R. 303, 323 (Bankr. D. Del. 2010), on reconsideration in part (Mar. 19, 2010) (dismissing constructive fraudulent transfer claims on motion to dismiss where there was no allegation that the board fees

[26] Under Section 548(a)(1)(B) any transactions more than two years before the Petition Date would be barred so the appropriate date for Section 548 claims is March 8, 2013.

were excessive or outside the ordinary course of business). Accordingly, all Clawback Claims against the Director Defendants should be dismissed.

### G. All Claims against Released Directors Should Be Dismissed

82. All claims against Defendants Emanuel Pearlman, Stephen Kovacs, Steve Barrenchea, Alan Bell, Richard Cohen, William Greenwood, and Steve Sisselman (the "Released Directors") should be dismissed based on valid and enforceable pre-Petition releases entered between the Released Directors and Dune. Following their resignation from Dune's board of directors, on January 15, 2013 Dune granted Pearlman and Kovacs an unconditional release of all claims in exchange for their release of all claims against Dune, following their resignation from Dune's board of directors.[27] The other Released Defendants entered into pre-Petition indemnification agreements with Dune pursuant to which Dune had to have brought any claim against them arising from their service on Dune's board of directors that within 2 years of the termination of their association with Dune or the claims whereupon any claim not asserted would be deemed released.[28] These five Released Directors resigned in 2012 with the result that all claims against them were released in 2014, well before Dune's bankruptcy or the current litigation. ¶¶ 13, 20, 23-25.

83. The Trustee requests that this Court take judicial notice of these releases provided by Dune to the Released Directors. See Xtreme Power Inc., 563 B.R. at 630-31. As a result of these releases, all claims against the Released Directors should be dismissed.

---

[27] See Higgins Decl., Ex. G [Dune 8-K, filed Jan. 16, 2013].

[28] See Higgins Decl., Ex. F [Dune 8-K, filed Dec. 22, 2011] (attaching form of indemnification agreement as exhibit).

### H. The Claims and Allegations Asserted Against Defendants Who Were Not Affiliated With Dune at the Time Should Be Dismissed

84. The Trustee's blunderbuss technique of pleading all allegations against all Defendants without differentiating among them has resulted in the assertion of claims against certain Defendants who, per the allegations of the Amended Complaint, were not associated with Dune at the time of the allegedly culpable conduct. Every claim against a Defendant based on conduct alleged to have occurred during a period which, by the Trustee's own pleadings, that Defendant was not an officer of Dune should be dismissed. See DiRienzo v. Lichtenstein, C.A. No. 7094-VCP, 2013 WL 5503034, at *17 (Del. Ch. Sept. 30, 2013) (dismissing claims against former board member based on actions taken by the company after the former board member had ceased to be a director); Sternberg v. O'Neil, Civ. A. No. 8592, 1989 WL 137932, at *7 (Del. Ch. 1989) (dismissing claims against three defendants that became directors after the alleged misconduct, explaining that "a director is not legally responsible for acts occurring before he becomes a board member unless he ratifies, conceals, becomes a party or fails to repair the wrong"). For the convenience of the Court, the Defendants have prepared a chart, annexed hereto as Exhibit 1, identifying allegations that are asserted against Defendants that occurred during periods where those Defendants, based on the Trustee's own pleadings, were not associated with Dune.[29]

[29] By way of example, Emanuel R. Pearlman was a director only between January 2012 and January 2013. ¶ 15. Yet the Amended Complaint pleads that *every single defendant*, including Mr. Pearlman, participated in the Goldking Acquisition that took place in April and May, 2007. ¶¶ 6 (defining all defendants, including Pearlman, as the "D&O Defendants"), 32 (alleging that the "D&O Defendants" acted negligently in consummating the Goldking Acquisition). As another example, Amiel David was associated with Dune only through March 2009. ¶ 10. Mr. David is defined as an Officer Defendant. ¶ 11. Yet the Trustee pleads that every single Officer Defendant, including Mr. David, negotiated the Eos Petro transaction to preserve their employment with Dune in 2014 – despite that Mr. David, an Officer Defendant, had ceased to be employed by Dune *half a decade before this transaction*. ¶ 134.

## V. Conclusion

For the foregoing reasons, Defendants respectfully requests that the Court enter an order (i) dismissing the Amended Complaint in its entirety, with the exceptions of Counts 15 and 16 as against the Officer Defendants other than Amiel David, with prejudice and without leave to replead, and (ii) granting such other and further relief as the Court sees just and proper.

Dated: May 12, 2017.

Respectfully submitted,

**PORTER HEDGES LLP**

By: */s/* John F. Higgins
John F. Higgins
State Bar No. 09597500
Alison P. Henderson
State Bar No. 24087707
1000 Main Street, 36th Fl.
Houston, Texas, 77002
Telephone: (713) 226-6648
Facsimile: (713) 226-6248
Email: jhiggins@porterhedges.com
Email: ahenderson@porterhedges.com

– and –

**BROWN RUDNICK LLP**
Sigmund S. Wissner-Gross
Kenneth J. Aulet
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: swissner-gross@brownrudnick.com
Email: kaulet@brownrudnick.com

*Counsel for Defendants.*