

**Dated: August 24, 2017.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| DUNE ENERGY, INC. | § | Case No. 15-10336-HCM |
| DUNE OPERATING COMPANY | § | Chapter 11 |
| DUNE PROPERTIES, INC. | § | |
| Debtors. | § | (Jointly Administered) |
| DAN B. LAIN, as Trustee of the Dune | § | |
| Plan Trust | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 17-01052-HCM |
| JAMES A. WATT, ET. AL | § | |
| Defendants. | § | |

## OPINION REGARDING MOTION TO REMAND OR ABSTAIN

Here, the Court tackles whether, at the behest of Plaintiff, this removed suit should be returned to the state court from whence it came. Ultimately, the Court finds that it must (and should) abstain, and the suit will be remanded to the state court in Brazoria County, Texas.

1

# I
# PROCEDURAL BACKGROUND

### A. Bankruptcy Case

On March 8, 2015, Dune Energy, Inc., as debtor ("Debtor"), filed a voluntary Chapter 11 bankruptcy petition in this Court. The Debtor was an independent energy company that owned and operated oil and gas properties together with two wholly-owned subsidiaries—Dune Operating Company and Dune Properties, Inc. (collectively, "Debtors"). The Chapter 11 cases of all three Debtors were jointly administered in the Debtor's bankruptcy case (bankruptcy case no. 15-10336). *See* PX-1 through PX-7.[1]

Shortly after the bankruptcy filing, the Debtors sought Court approval of bid procedures for the sale of their assets under § 363 of the Bankruptcy Code. After several hearings, the Court approved the sale procedures and ultimately approved the sale of substantially all of the Debtors' oil and gas assets in July 2015. Following the sale, the Debtors filed a Chapter 11 Plan ("Plan") and the Court confirmed the Plan on September 18, 2015. *See* Confirmation Order and Plan (DX-14).

The Plan created a liquidating trust ("Plan Trust") to pursue the Debtors' remaining causes of action for the benefit of creditors. *See* Plan ¶ 6.4 (DX-14). Dan B. Lain was appointed as the trustee ("Plan Trustee") of the Plan Trust. The Plan Trustee was vested with, among other rights, the power to prosecute, enforce, and settle claims and causes of action of the Debtors and their bankruptcy estates against former and current officers and directors of the Debtors. *See* § 5.2(b) of Liquidating Trust Agreement, Exhibit B to Plan; Defined Terms, Exhibit A to Plan (DX-14).

---

[1] References to exhibits admitted into evidence at the hearing on the Motion to Remand or Abstain (herein "Motion") are made in the following manner: Plaintiff's exhibits are referred to as "PX-[number]," and Defendants' exhibits are referred to as "DX-[number]."

B. **Pending Removed Suit**

    1.   State Court Suit, Removal, & Transfer

On March 6, 2017, the Plan Trustee ("Plaintiff") filed a suit against eighteen defendants ("Defendants")[2] in the 149th District Court of Brazoria County, Texas ("State Court"). The State Court action is styled *Dan Lain, Trustee of the Dune Plan Trust v. James A. Watt, et al.*, cause no. 90698-CV ("Suit"). One day later, on March 7, 2017, Plaintiff filed a First Amended Original Petition in the Suit ("Amended Petition") (DX-1). The eighteen Defendants named in the Suit are all former directors or officers of the Debtors. In short, the Suit sets forth multiple causes of action against various Defendants based on alleged director and officer misconduct under Texas, Delaware, and common law.

On March 24, 2017, Defendants removed the Suit from the State Court to the U.S. District Court for the Southern District of Texas ("SDTX")—the federal judicial district that includes Brazoria County, Texas. *See* Notice of Removal (DX-3). Upon motion by Defendants on April 11, 2017, the U.S. District Court for the SDTX transferred the Suit to the U.S. District Court for the Western District of Texas ("WDTX")—the federal judicial district where the Debtors' bankruptcy cases were filed. Upon further motion by Defendants, and pursuant to a standing order, on May 3, 2017, the U.S. District Court for the WDTX referred the Suit to this Court. *See* Orders (DX-4).[3]

---

[2] The named Defendants are James A. Watt, Frank T. Smith, Jr., Hal L. Bettis, Amiel David, Alan Gaines, Alan D. Bell, Alexander A. Kulpecz, Jr., Emanuel R. Pearlman, Eric R. Stearns, John R. Brecker, Marjorie L. Bowen, Michael R. Keener, Richard M. Cohen, Robert A. Schmitz, Stephen P. Kovacs, Steven Barrenchea, Steven M. Sisselman, and William E. Greenwood.

[3] It is not uncommon for a "conduit" federal court to permit the "home" bankruptcy court to decide whether a removed suit should be remanded to state court. *See, e.g., Marroquin v. Taylor Bean & Whitaker Mortg. Corp.*, 2013 WL 1703867 at *4 (Bankr. W.D. Tex., Apr. 19, 2013) (citations omitted).

2.    <u>Adversary Proceeding</u>

On May 5, 2017, the removed Suit was docketed in this Court as adversary proceeding no. 17-01052. On May 11, 2017, the Court entered an Order setting an initial status hearing. One day later, Defendants filed a lengthy motion to dismiss Plaintiff's Amended Petition under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("<u>Federal Rules</u>"). Since Plaintiff's Amended Petition was filed in State Court under the Texas Rules of Civil Procedure, and Defendants were seeking dismissal of the Amended Petition under the Federal Rules, the Court required Plaintiff to replead the Amended Petition as a complaint under the Federal Rules. *See* Orders and Motion (dkt# 8, 9, 20).[4]

On June 9, 2017, as required by the Court, Plaintiff repled its Amended Petition by filing a Second Amended Complaint under the Federal Rules ("<u>Complaint</u>") (dkt# 25).[5] Plaintiff also filed a request for a jury trial and notice of non-consent to entry of final orders and a final judgment by this Court in the adversary proceeding. Plaintiff has repeatedly requested a jury trial in its petitions filed in State Court and in the Complaint filed in this Court. *See* Plaintiff's Petition, Amended Petition, Statement, and Complaint (dkt# 3, 24, 25).

Plaintiff filed the Complaint with this Court subject to Plaintiff's right to seek remand of the Suit to State Court and stated that Plaintiff would be filing a motion to remand. *See* Complaint (dkt# 25).

---

[4] References to "dkt#" mean the docket number maintained in CM/ECF by the Clerk of the Bankruptcy Court in this adversary proceeding no. 17-01052.

[5] Given the filing of the Complaint by Plaintiff under the Federal Rules, the Court then dismissed the Defendants' motion under Federal Rule 12(b)(6) (which was directed at Plaintiff's Amended Petition filed in State Court) as moot, without prejudice to Defendants' right to file a motion to dismiss directed at the Plaintiff's Complaint (dkt# 27).

3.    <u>Motion to Remand and Hearing</u>

Soon thereafter, on June 19, 2017, Plaintiff filed a Motion to Remand or Abstain and Brief in Support ("<u>Motion</u>") (dkt# 31). In sum, Plaintiff requests the Court remand the Suit to State Court based on three separate grounds: (1) lack of subject matter jurisdiction; (2) mandatory abstention; and (3) permissive abstention/equitable remand.

On July 14, 2017, Defendants filed a Response to the Motion ("<u>Response</u>") (dkt# 42). In sum, Defendants oppose remand of the Suit and contend that this Court has subject matter jurisdiction, that mandatory abstention does not apply, and that permissive abstention/equitable remand is not warranted. On July 26, 2017, Plaintiff filed a Reply ("<u>Reply</u>") to the Response (dkt# 62).

On August 4, 2017, the Court conducted a hearing on the Motion. Counsel for Plaintiff and counsel for Defendants appeared at the hearing. The parties presented oral arguments and evidence (in the form of testimony and exhibits) to the Court. The Court has considered the Motion, the Response, the Reply, the pleadings, the evidence, the record, and the statements and arguments of counsel.[6]

For the reasons set forth in this Opinion, the Court finds that the Motion should be granted and the Suit remanded to State Court.

## II
## SUBJECT MATTER JURISDICTION

First, Plaintiff seeks remand of the Suit to State Court based on lack of subject matter jurisdiction over the Suit by this Court. The primary thrust of Plaintiff's argument is that since the Debtors' Plan has already been confirmed by the Court, "post-confirmation"

---

[6] In rendering this Opinion, the Court has considered all the pleadings and briefs filed by the parties, all the arguments made by the parties, all the legal authorities cited by the parties, all admitted exhibits, and the testimony of all witnesses, regardless of whether they are specifically referred to in this Opinion.

bankruptcy jurisdiction in this Court is now limited and does not extend to the Suit filed against Defendants.

## A. Bankruptcy Jurisdiction Framework

Bankruptcy subject matter jurisdiction is created and granted to federal district courts by 28 U.S.C. § 1334. In turn, by statute, federal district courts are authorized to refer bankruptcy cases and proceedings to bankruptcy courts. 28 U.S.C. § 157(a). As is typical in federal districts throughout the country, the U.S. District Court for the Western District of Texas has referred all bankruptcy cases and proceedings to the U.S. Bankruptcy Court for the Western District of Texas (this Court). [7]

To begin, § 1334(a) provides that federal district courts shall have original and exclusive jurisdiction of "all cases under title 11." 28 U.S.C. § 1334(a). Title 11 is the U.S. Bankruptcy Code. "Cases under title 11" refers to the bankruptcy petition itself filed by or against a debtor. *See U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 306 (5th Cir. 2002). So, the federal district courts (and bankruptcy courts by reference from the district courts) have exclusive jurisdiction over bankruptcy petitions filed under the Bankruptcy Code. The Suit filed by Plaintiff is not a bankruptcy petition or a bankruptcy case, so exclusive subject matter jurisdiction over the Suit is not vested in this Court under § 1334(a).

Instead, the Suit is a civil proceeding filed by Plaintiff against Defendants. Section 1334(b) provides that federal district courts (and bankruptcy courts by reference from the district courts) shall have original, but not exclusive, jurisdiction over three categories of civil proceedings. In sum, the three categories are: (1) civil proceedings "arising under" the

---

[7] *See* Standing Order of Reference of Bankruptcy Cases entered in this District on October 4, 2013.

Bankruptcy Code; (2) civil proceedings "arising in" a bankruptcy case; and (3) civil proceedings "related to" a bankruptcy case. 28 U.S.C. § 1334(b). It is within at least one of these three categories that the Suit filed by Plaintiff must fall—"arising under," "arising in," or "related to" bankruptcy jurisdiction—for this Court to have subject matter jurisdiction over the Suit.

As to the first category, a civil proceeding "arises under" the Bankruptcy Code if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code. As to the second category, a civil proceeding "arises in" a bankruptcy case when it involves a cause of action that is not expressly created by the Bankruptcy Code, but nonetheless would have no existence outside of bankruptcy. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 96–97 (5th Cir. 1987); *see also In re U.S. Brass Corp.*, 301 F.3d at 306. These two categories of civil proceedings ("arises under" the Bankruptcy Code and "arises in" a bankruptcy case) are statutorily defined as "core" proceedings under 28 U.S.C. § 157(b).

As to the third category, the broadest grant of bankruptcy jurisdiction is over a civil proceeding that is "related to" a bankruptcy case (often called a "non-core" proceeding). The Fifth Circuit has recognized that a civil proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d at 93 (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original).

Whether a bankruptcy court has subject matter ***jurisdiction*** over a civil proceeding must not be confused with whether a bankruptcy court has statutory and constitutional ***authority*** to enter a final judgment and final orders in a civil proceeding. The jurisdiction vested in a bankruptcy court is the same as the bankruptcy subject matter jurisdiction

granted to a federal district court under 28 U.S.C. § 1334. This is due to the reference of bankruptcy cases and proceedings by a district court to a bankruptcy court under 28 U.S.C. § 157(a). *See In re U.S. Brass Corp.*, 301 F.3d at 304.

On the other hand, a bankruptcy court's *authority* to enter a final judgment and final orders in a civil proceeding depends upon the category of the civil proceeding. Generally, a bankruptcy court has authority to enter a final judgment and final orders in a "core" proceeding (i.e., a civil proceeding that either "arises under" the Bankruptcy Code or "arises in" a bankruptcy case). *See* 28 U.S.C. § 157(b)(1)–(2). Conversely, in a "non-core" proceeding (i.e., a civil proceeding that only "relates to" a bankruptcy case), a bankruptcy court only has authority to enter a final judgment and final orders with the consent of the parties. *See* 28 U.S.C. § 157(c)(2). Absent consent in a "non-core" proceeding, a bankruptcy court can hear the civil proceeding but must submit proposed findings of fact and conclusions of law to the district court for *de novo* review and rendition of a final judgment. *See* 28 U.S.C. § 157(c)(1); *see generally Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015); *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2171 (2014).

To determine the fundamental issue of whether this Court has bankruptcy jurisdiction under § 1334(b) over the Suit, it is not necessary to decide which of the three jurisdictional categories that the Suit may fall under ("arises under," "arises in," or "related to" bankruptcy jurisdiction).[8] Rather, all that must be shown to establish bankruptcy jurisdiction is that the Suit, at a minimum, "relates to" the Debtors' bankruptcy case. *See U.S. Brass Corp.*, 301 F.3d at 304; *In re Wood*, 825 F.2d at 93.

---

[8] As explained below, it is necessary to decide which category of bankruptcy jurisdiction exists over the Suit to determine whether "mandatory abstention" applies.

B. **Post-Confirmation Bankruptcy Jurisdiction**

Bankruptcy jurisdiction becomes more limited after confirmation of a bankruptcy plan (often called "post-confirmation"). Here, the Debtors' Plan was confirmed in September 2015, and Plaintiff filed the Suit against Defendants in March 2017.

The bankruptcy subject matter jurisdiction statute (28 U.S.C. § 1334) does not expressly limit bankruptcy jurisdiction after confirmation of a bankruptcy plan. However, in a 2001 decision, the Fifth Circuit seemed to adopt a more exacting theory for post-confirmation jurisdiction, recognizing that the broad "related to" category of bankruptcy jurisdiction is reduced after confirmation of a bankruptcy plan. Simply put, this is because, after confirmation of a plan, a bankruptcy estate ceases to exist. *See Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390–91 (5th Cir. 2001).

Specifically, the Fifth Circuit stated that after plan confirmation, "related to" bankruptcy jurisdiction ceases to exist for matters other than those "pertaining to the implementation or execution of the plan." *In re Craig's Stores*, 266 F.3d at 390 (finding that bankruptcy jurisdiction did not exist over post-confirmation dispute between reorganized debtor and its lender); *In re U.S. Brass Corp.*, 301 F.3d at 304 (finding that bankruptcy jurisdiction did exist post-confirmation over agreement by debtor to liquidate claims through binding arbitration).

However, a subsequent decision by the Fifth Circuit in 2008 narrowly interpreted the *Craig's Stores* decision and identified three factors that were critical to the determination in *Craig's Stores* that bankruptcy jurisdiction did not exist post-confirmation. *Newby v. Enron*

*Corp. (In re Enron Corp. Secs.)*, 535 F.3d 325, 335–36 (5th Cir. 2008). In these more recent

words of the Fifth Circuit:

> Nothwithstanding its statement that bankruptcy jurisdiction exists after plan confirmation only for "matters pertaining to the implementation or execution of the plan," the facts in *Craig's Stores* were narrow; they involved post-confirmation claims based on post-confirmation activities.

*In re Enron Corp.,* 535 F.3d at 335.

As a result, lower courts in the Fifth Circuit have broadly construed the "pertains to

the implementation or execution of a plan" jurisdictional test laid out in *Craig's Stores* and

recognized that *Craig's Stores* was premised on narrow and specific facts. In determining if

post-confirmation bankruptcy jurisdiction exists over a civil proceeding, courts have

examined the three factors identified by the Fifth Circuit in the subsequent *In re Enron Corp.*

decision, which are whether: (1) the claims primarily arise from pre-confirmation or

post-confirmation relations between the parties; (2) any claims or antagonisms were pending

between the parties on the date of plan confirmation; and (3) any facts or law deriving from

the bankruptcy are necessary to the claims. *In re Enron Corp.*, 535 F.3d at 335; *see, e.g.*,

*Brickley v. Scantech Identification Beams Sys., LLC*, 566 B.R. 815, 829–30 (W.D. Tex. 2017)

(applying three factors and finding that post-confirmation "related to" bankruptcy

jurisdiction existed); *Schmidt v. Nordlicht*, 2017 WL 526017, at *3 (S.D. Tex. Feb. 9, 2017)

(same).

Indeed, for the past decade, courts within the Fifth Circuit have consistently held

that bankruptcy jurisdiction continues to exist post-confirmation over suits based on

pre-confirmation claims and activities brought by a plan trustee appointed under a

bankruptcy plan. *See, e.g.*, *Brickley*, 566 B.R. at 829–30 (finding "related to" bankruptcy

jurisdiction in post-confirmation suit by plan trustee based on breach of fiduciary duty and

RICO claims); *Schmidt*, 2017 WL 526017, at *3 (finding "related to" bankruptcy jurisdiction in post-confirmation director and officer liability suit filed by plan trustee); *WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 604–06 (S.D. Tex. 1999) (finding "related to" bankruptcy jurisdiction in post-confirmation suit by plan trustee based on breach of fiduciary duties and state law claims); *Kaye v. Dupree, (In re Avado Brands, Inc.)*, 358 B.R. 868, 878–89 (Bankr. N.D. Tex. 2006) (same); *Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 221 (Bankr. N.D. Tex. 2004) (same).

Here, the Court easily finds that it has bankruptcy subject matter jurisdiction over the Suit filed by Plaintiff against Defendants as a "related to" proceeding. Plaintiff is a Plan Trustee appointed under the confirmed bankruptcy Plan of the Debtors. As Plan Trustee, Plaintiff is empowered to pursue and collect on the Debtors' causes of actions (including claims against Defendants in the Suit) and to distribute any net recoveries to pay creditors of the Debtors under the Plan. The Plan is a "liquidation" plan, meaning that the Debtors have no ongoing business operations and execution of the Plan involves the Plan Trustee (Plaintiff) pursuing causes of action for the benefit of creditors.[9] Without doubt, the Suit "pertains to implementation and execution" of the Debtors' Plan.

The Court concludes that after applying the three factors recognized for post-confirmation jurisdiction by the courts, it has "related to" bankruptcy jurisdiction over the Suit. *See, e.g.*, *In re Enron Corp.*, 535 F.3d at 335; *Brickley*, 566 B.R. at 829–30; *Schmidt*, 2017 WL 526017, at *3. First, the claims in the Suit arise entirely from pre-confirmation actions allegedly taken (or not taken) by Defendants. Second, as correctly recognized by Defendants, antagonism existed with Defendants prior to confirmation of the Plan in

---

[9] Courts have also suggested that post-confirmation jurisdiction is broader when the confirmed plan liquidates, rather than reorganizes, a debtor. *See, e.g*, *Schmidt*, 2017 WL 526017, at *3.

September 2015. Months before Plan confirmation (in June 2015), the Official Committee of Unsecured Creditors sought and obtained Court approval to bring causes of action on behalf of the Debtors' estates against present and former officers and directors of the Debtors. *See* Emergency Motion and Order (DX-12 and DX-13). Third, while limited facts and law deriving from the bankruptcy may be examined with respect to some of the claims, any net recoveries made by Plaintiff on these claims will affect distributions to creditors under the confirmed Plan.

After considering these three factors, the Court finds that post-confirmation "related to" bankruptcy jurisdiction exists over the Suit.

### C. Conclusion—Bankruptcy Jurisdiction

For these reasons, this Court has bankruptcy subject matter jurisdiction over the Suit brought by Plaintiff against Defendants. As a consequence, the Court denies Plaintiff's Motion for remand based on lack of subject matter jurisdiction.

### III
### MANDATORY ABSTENTION

Second, Plaintiff seeks remand of the Suit based on mandatory abstention. The gravamen of Plaintiff's argument is that this Court is required to abstain from deciding the Suit under 28 U.S.C. § 1334(c)(2).

### A. Statutory Requirements

Mandatory abstention in a bankruptcy proceeding is governed by 28 U.S.C § 1334(c)(2). Section 1334(c)(2) states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing

12

such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

This statute requires a federal court to abstain from hearing a proceeding if the following five requirements are met: (1) a motion to abstain is "timely" made; (2) the proceeding is a "non-core" ("related to") proceeding based upon a state law claim or cause of action; (3) the proceeding has no independent basis for federal jurisdiction other than § 1334(b); (4) the action can be adjudicated timely in state court; and (5) an action has been commenced in state court. *See Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir. 2007). If the requirements for mandatory abstention are met, a federal court has no discretion—it must abstain. *See, e.g.*, *WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 613 (citations omitted).

As to the first requirement, there has been no suggestion that Plaintiff did not timely file its Motion seeking mandatory abstention. No specific time limit is set by statute or rule for requesting mandatory abstention under § 1334(c)(2). *See Gehan Props. II, Ltd. v. Integrated Performance Sys., Inc. (In re Performance Interconnect Corp.)*, 2007 WL 2088281, at *3–*4 (Bankr. N.D. Tex. July 19, 2007). Here, the Motion seeking mandatory abstention was filed by Plaintiff within forty-five days of the docketing of the removed Suit in this Court and is timely filed in any event. Therefore, the Court's analysis will primarily focus on whether the remaining requirements of mandatory abstention have been met.

## B. "Related to" Requirement

Mandatory abstention applies only to a "related to" bankruptcy proceeding (also known as a "non-core" proceeding) that is based on state law claims or causes of action. Mandatory abstention does not apply to a "core" proceeding (also known as an "arising under" or "arising in" proceeding). *See* 28 U.S.C. § 1334(c)(2); *Cadle Co. v. Moore (In re*

*Moore*), 739 F.3d 724, 728 (5th Cir. 2014); *Gober v. Terra Corp., (In re Gober),* 100 F. 3d 1195, 1206 (5th Cir. 1996).

Both the "form and substance" of the proceeding should be analyzed to determine if it is "core" or "non-core." Each cause of action should be "separately examined" in making this determination. *See WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 608 (citations omitted); *Legal Xtranet, Inc. v. AT&T Mgmt. Servs., L.P. (In re Legal Xtranet, Inc.),* 453 B.R. 699, 708 (Bankr. W.D. Tex. 2011). Some courts state that the "core" versus "non-core" analysis is applied to the proceeding as a "whole"; other courts state that the proceeding is not examined as a "whole," but rather as to each of the causes of action in a suit. *Cf. WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 608; *In re Legal Xtranet*, 453 B.R. at 708.

A "core" proceeding is one that "arises under" the Bankruptcy Code or "arises in" a bankruptcy case. 28 U.S.C. § 157(b). According to the Fifth Circuit, a cause of action created or determined by a statutory provision of the Bankruptcy Code "arises under" the Bankruptcy Code; a cause of action that would have no existence outside of bankruptcy "arises in" a bankruptcy case. *See In re Wood*, 825 F.2d at 96–97.

Most courts have found that state law causes of action based on pre-bankruptcy events that do not invoke a substantive right created by federal bankruptcy law fail to "arise under" the Bankruptcy Code. *See WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 609–10 (collecting cases). If the causes of action asserted exist under state law and stand independent of the bankruptcy case, they do not "arise in" a bankruptcy case. *See, e.g.*, *Schmidt*, 2017 WL 526017, at *5; *WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 612. Just because a bankruptcy plan creates a liquidating trust empowered to pursue pre-bankruptcy state law causes of action does not mean that the causes of action "arise in" a bankruptcy

14

case. *See WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 612 ("The test is . . . not merely

whether a bankruptcy court allowed or authorized the prosecution of the claim."). Similarly,

claims do not "arise in" a bankruptcy just because they would not exist "but for" the filing

of bankruptcy. *See Gupta v. Quincy Medical Ctr.*, 858 F.3d 657, 664–65 (1st Cir. 2017);

*Schmidt*, 2017 WL 526017, at *5. Instead, "core" jurisdiction exists if the claims are of the

type that can only exist in a bankruptcy case. *See Gupta*, 858 F.3d at 665.

Applying these principles, the Court has separately examined each of the causes of

action asserted by Plaintiff against Defendants in the Complaint.[10] Defendants are all former

directors or officers of the Debtors. In sum, the causes of action alleged in the Complaint are

for breach of corporate fiduciary duties under Texas and Delaware statutory and common

law; trust fund liability under state law; corporate waste under state law; gross negligence

under state law; assumpsit and unjust enrichment under state law; common law fraud under

state law; ultra vires conduct under state law; securities law violations under Texas state

law; and constructive fraudulent transfers under Texas and Delaware state law.

All of the causes of action in the Complaint are premised on pre-bankruptcy actions

allegedly taken (and not taken) by Defendants. Furthermore, all of the causes of action are

based on state law. None of the causes of action in the Complaint are based on the

Bankruptcy Code, and each would have an existence outside of bankruptcy. As a result, the

---

[10] Here, both Plaintiff and Defendants conceded at the hearing on the Motion that the appropriate pleading to examine for determining mandatory abstention was the Complaint filed by Plaintiff (rather than the Amended Petition filed in State Court). The Court agrees with this concession. *See H.T. Hackney Co. v. REWJB Gas Invs. (In re United Petroleum Grp., Inc.)*, 311 B.R. 307, 311 (Bankr. S.D. Fla. 2004) (concluding that although removal jurisdiction is determined by the pleading on file at the time of removal, a mandatory abstention analysis takes into account subsequent events in the suit). Further, no challenge was made by Plaintiff as to the propriety of Defendants removal of the Suit from State Court. If such a challenge to removal had been made, then it would have been appropriate to examine the Amended Petition on file at the time of removal to determine federal removal jurisdiction. *See, e.g.*, *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985).

Court concludes that, whether viewed separately or as a whole, the Suit is not within this Court's "core" bankruptcy jurisdiction.

At the hearing on the Motion, the Court closely questioned Plaintiff's counsel regarding whether Plaintiff was attempting to use § 544(b) of the Bankruptcy Code to assert the state law fraudulent transfer claims in the Complaint (Counts 16 and 17). Plaintiff's counsel stipulated that Plaintiff was not and will not use § 544(b) of the Bankruptcy Code to pursue such claims. Moreover, the face of the Complaint does not assert standing under § 544(b) of the Bankruptcy Code to bring these claims. Based on this stipulation by Plaintiff's counsel, the Court finds that the state law fraudulent transfer claims in the Complaint are not within the "core" jurisdiction of the Court.

Defendants attempt to create "core" jurisdiction in this Court by asserting that most of the causes of action in the Complaint are precluded by a "correct" interpretation of the confirmed Plan, which they call a critical "gating" issue. *See* Response, pp. 9–13. But as often recognized by courts, the assertion of a defense based on an interpretation of the confirmed plan or order of a bankruptcy court is not sufficient to invoke "core" bankruptcy jurisdiction. *See, e.g.*, *Nancy Sue Davis Tr. v. Davis*, 2009 WL 1066996, at *2 (S.D. Tex. Apr. 21, 2009) (concluding that defenses based on an interpretation of the confirmation order or plan will not create core bankruptcy jurisdiction); *Malesovas v. Sanders*, 2005 WL 1155073 at *3 (S.D. Tex. May 16, 2005) (stating defenses based on confirmed bankruptcy plan do not create bankruptcy jurisdiction over a removed suit; state courts are qualified to and routinely interpret bankruptcy plans); *Principal Life Ins. Co. v. JPMorgan Chase Bank, N.A. (In re Brooks Mays Music Co.)*, 363 B.R. 801, 810 (Bankr. N.D. Tex. 2007) (noting defense based on a release in a bankruptcy court order does not create "core" jurisdiction in bankruptcy court).

Defendants also argue the claims are "core" because, but for the Plan, Plaintiff would not have standing to pursue the causes of action asserted against Defendants, and because the Complaint expressly mentions the Plan. *See* Response, pp. 13–14. This type of argument has likewise been rejected by the courts. *See Gupta*, 858 F.3d at 664–65. A bankruptcy court's order or confirmed plan authorizing the prosecution of a cause of action does not make the cause of action a "core" proceeding. *See WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 612; *see also Malesovas*, 2005 WL 1155073, at *3 (remanding suit to state court even though state court may have to interpret confirmed bankruptcy plan).

In sum, the Court concludes that the causes of action asserted in the Complaint are not "core" proceedings in form or substance. Instead, the causes of action in the Complaint are only "related to" (non-core) proceedings based on state law. Courts within the Fifth Circuit have consistently found that post-confirmation suits by plan trustees based on state law claims are only within the "related to" (and not "core") bankruptcy jurisdiction of a federal court. *See, e.g., Brickley*, 566 B.R. at 829–30 (stating post-confirmation claims for breach of fiduciary duty and state law claims are "related to" claims); *Schmidt*, 2017 WL 526017, at *3 (same); *WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 613 (same); *In re Avado Brands*, 358 B.R. at 878–89 (same).

As a result, the Court finds that this requirement for mandatory abstention (the Suit is a "related to," "non-core" proceeding based on state law) has been satisfied.

**C. <u>Independent Jurisdiction Requirement</u>**

Mandatory abstention applies only when the proceeding has no independent basis for federal jurisdiction, other than 28 U.S.C. § 1334(b) (the bankruptcy jurisdiction statute).

17

Here, the Court is satisfied that the Suit has no independent basis for federal jurisdiction other than § 1334(b). There is no diversity jurisdiction in the Suit and none has been suggested. *See* 28 U.S.C. § 1332. Further, Plaintiffs' Complaint alleges only state law causes of action.

Defendants' suggestion that independent federal jurisdiction may exist because the Complaint relies on §§ 544 and 548 of the Bankruptcy Code is misplaced for two reasons. First, the Complaint on its face does not state a cause of action under either § 544 or § 548, and Plaintiff's counsel stipulated that it is not using § 544 to assert state law fraudulent transfer claims. Second, federal jurisdiction over any claims under §§ 544 and 548 would be based on 28 U.S.C. § 1334(b) (the bankruptcy jurisdiction statute). So, there would be no "independent" basis for federal jurisdiction in any event.

Consequently, the Court finds that this requirement for mandatory abstention (that the Suit has no independent basis for federal jurisdiction) has been satisfied.

**D. <u>Timely Adjudication Requirement</u>**

Mandatory abstention is required only if the proceeding can be "timely adjudicated" in state court. While a naked assertion that a proceeding can be timely heard in state court will not satisfy the requirement, courts have recognized that the requirement is a relatively low hurdle to clear. *See, e.g.*, *WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 605–06; *Montalvo v. Vela (In re Montalvo)*, 559 B.R. 825, 842 (Bankr. S.D. Tex. 2016). The issue is not whether a matter can be adjudicated more timely in state court than in federal court. Rather, the movant need only present evidence to show that the proceeding can be heard by the state court in a timely fashion. *See, e.g.*, *WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 605.

18

Here, Plaintiff easily satisfied its burden to show that the Suit can be timely adjudicated in the State Court. At the hearing on the Motion, Plaintiff provided credible testimony and introduced exhibits regarding the typical practices in and caseload of the 149th District Court of Brazoria County. *See* PX-12 and PX-13. The evidence clearly showed that the State Court can timely adjudicate the Suit.

As a result, the Court finds that this requirement for mandatory abstention (that the Suit can be timely adjudicated in State Court) has been satisfied.

**E.** **Commenced in State Court Requirement**

Finally, mandatory abstention applies only if an action is commenced in state court. This requirement is satisfied if the state court action was filed, removed to federal court, and then the federal court is requested to abstain. *See, e.g.*, *Schmidt*, 2017 WL 526017, at *1, *4; *WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 602, 613; *see also In re Simmons*, 205 B.R. 834, 847 (Bankr. W.D. Tex. 1997) (denying request for mandatory abstention because movant had not yet commenced a proceeding in state court at the time of filing the motion for abstention in bankruptcy court).

Here, there can be no dispute that the Suit was commenced by Plaintiff in State Court prior to removal and prior to abstention being sought in this Court. Plaintiff commenced the State Court action against Defendants on March 6, 2017. The action was removed to federal court on March 24, 2017 and transferred to this Court on May 3, 2017. Abstention was then requested in this Court by Plaintiff on June 19, 2017. See PX-12 (Register of Actions in State Court); DX-3 (Notice of Removal); Order (dkt# 1); Motion (dkt# 31). Indeed, in their pleadings, Defendants conceded that this requirement has been

satisfied. *See* Response, p. 9 ("Here, the Defendants do not dispute that an action was commenced in state court.").[11]

For these reasons, the Court finds that this requirement for mandatory abstention (that an action is commenced in state court) has been satisfied.

### F. Conclusion—Mandatory Abstention

In conclusion, the Court finds that each of the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2) have been satisfied. Consequently, the Court has no discretion; it must remand the Suit to State Court.

Nevertheless, the Court will still address Plaintiff's alternative request for remand based on permissive abstention. This is because a bankruptcy court may still permissively abstain under 28 U.S.C. § 1334(c)(1) when some, but not all, of the requirements of mandatory abstention are satisfied. *See In re Gober*, 100 F.3d at 1206–07.

## IV
## PERMISSIVE ABSTENTION/EQUITABLE REMAND

Alternatively, Plaintiff seeks remand of the Suit to State Court based on permissive abstention and/or equitable remand. The genesis of Plaintiff's argument is that this Court should exercise its discretion to abstain and remand under 28 U.S.C. § 1334(c)(1) (permissive abstention) and/or 28 U.S.C. § 1452(b)(equitable remand).

---

[11] Yet at the hearing on the Motion, Defendants argued that a state court proceeding must be commenced prior to the debtor's bankruptcy case being filed for mandatory abstention to apply. This argument mixes apples and oranges. The governing statute (28 U.S.C. § 1334(c)(2)) refers to a "proceeding" and an "action," not a bankruptcy "case." Courts have often mandatorily abstained from post-confirmation suits filed by a plan trustee in state court, even though (obviously) the suit was commenced after the filing of the bankruptcy case. *See, e.g.*, *Schmidt*, 2017 WL 526017, at *1, *4; *WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 602, 613.

## A. **Applicable Statutes**

Permissive abstention in a bankruptcy proceeding is governed by 28 U.S.C.

§ 1334(c)(1). Section 1334(c)(1) states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Equitable remand of a bankruptcy proceeding is provided for by 28 U.S.C. § 1452(b).

Section 1452(b) states:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

According to the Fifth Circuit, bankruptcy courts have broad discretion to

permissively abstain and equitably remand a suit. *See, e.g.*, *In re Gober*, 100 F.3d at 1206;

*Browning v. Navarro*, 743 F.2d 1069, 1077 n.21 (5th Cir. 1984). Such discretion is not limited

by the type of proceeding. Rather, the bankruptcy court may permissively abstain from both

"core" and "non-core" bankruptcy proceedings. *In re Gober*, 100 F.3d at 1206.

## B. **Factors**

Courts throughout the Fifth Circuit typically use a factors-based analysis to

determine if permissive abstention and equitable remand of a bankruptcy civil proceeding is

appropriate. Because the two statutes are similar in purpose, the same factors are usually

weighed to determine if permissive abstention or equitable remand is warranted. *See, e.g.*,

*Regal Row Fina, Inc. v. Wash. Mut. Bank*, 2004 WL 2826817 at *8 (N.D. Tex. Dec. 9, 2004);

*Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 785 (E. D. Tex. 2001); *Inter Nat'l Bank v. Rosales (In*

*re Rosales)*, 2012 WL 4343701 at *4 (Bankr. W.D. Tex. Sept. 21, 2012); *Special Value*

*Continuation Partners, L.P. v. Jones (In re Special Value Continuation Partners, L.P.)*, 2011 WL 5593058 at *7–*8 (Bankr. S.D. Tex. Nov. 10, 2011).

The non-exclusive factors examined include:

(1) the effect or lack thereof on the efficient administration of the estate if the court remands or abstains;
(2) extent to which state law issues predominate over bankruptcy issues;
(3) difficult or unsettled nature of applicable law;
(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
(5) jurisdictional basis, if any, other than 28 U.S.C. § 1334;
(6) degree of relatedness or remoteness to main bankruptcy case;
(7) the substance, rather than the form, of an asserted core proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of non-debtors parties;
(13) comity; and
(14) the possibility of prejudice to other parties in the action.

*See Regal Row*, 2004 WL 2826817 at *8; *Broyles*, 266 B.R. at 785; *In re Rosales*, 2012 WL 4343701 at *4; *Special Value*, 2011 WL 5593058 at *7–8.

## C. **Analysis of Factors**

Here, on balance, the Court finds that the factors weigh in favor of permissive abstention and equitable remand of the Suit to State Court. The following is the Court's analysis of the factors.

### 1. Factors in Favor of Abstention/Remand

In sum, nine factors weigh in favor of permissive abstention and equitable remand of the Suit under the circumstances.

22

Factor 1 (efficient administration of estate) weighs in favor of abstention and remand. As Plaintiff correctly points out, there is no longer a bankruptcy estate to administer in the Debtors' bankruptcy case. A liquidating Plan has been confirmed and the Debtors are no longer operating under bankruptcy supervision (or otherwise). The State Court is well positioned to promptly adjudicate the Suit and determine whether the claims asserted have merit and any recoverable value for creditors.

Factor 2 (predominant issues) also weighs in favor of abstention and remand. State law (and not bankruptcy law) issues predominate in the Suit. The multiple causes of action in the Complaint are all based on state law. Defendants' argument, that critical "gating" bankruptcy Plan defenses are better decided by this Court, is unavailing for several reasons. Most of the suggested defenses—an exculpation clause, lack of standing, and statute of limitations—are also based on state law. In the event the Plan may impact any such defenses, the State Court is capable of reading and understanding the Plan. As the federal district court in *Malesovas* recognized: "bankruptcy plans of reorganization, no matter how complicated, are contracts which can be interpreted by other courts of competent jurisdiction. . . . Thus, state courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation." 2005 WL 1155073 at *3.

Factors 4 (presence of related proceeding), 5 (jurisdictional basis), 6 (degree of remoteness), and 7 (substance of proceeding) all weigh heavily in favor of abstention and remand. There is a related proceeding present that was commenced in state court—the Suit that was originally filed by Plaintiff in Brazoria County, Texas. There is no federal jurisdiction over the Suit other than bankruptcy jurisdiction under 28 U.S.C. § 1334. The Suit is quite remote from the Debtors' bankruptcy case, where a liquidating Plan was

23

confirmed almost two years ago. And the substance, as well as the form, of the Suit is not a "core" proceeding.

Factors 9 (burden on the court's docket) and 11 (jury trial) also weigh heavily in favor of permissive abstention and remand. Here, the burden on the docket of the U.S. District Court for the Western District of Texas must also be considered. This is because this Court (a bankruptcy court) does not have authority to enter a final judgment in the Suit, since it is a "non-core" proceeding and this Court lacks all parties' consent. *See* 28 U.S.C. § 157(c)(1)–(2). As a result, any final judgment in the Suit would have to be rendered by the federal District Court. *See* 28 U.S.C. § 157(c)(1).

Even more importantly, Plaintiff has repeatedly demanded (and is entitled to) a jury trial in the Suit. This Court lacks authority to conduct a jury trial given the lack of party consent. *See* 28 U.S.C. § 157(e). So, the U.S. District Court (not this Court) would have to conduct a trial if the Suit stayed in federal court. The U.S. District Court for the Western District of Texas has among the heaviest caseloads in the entire country. These hard-working federal district judges handle massive criminal dockets as well as substantial civil dockets, while enduring several judicial vacancies. *See* U.S. District Court Judicial Caseload Profile (PX-14). Although this Court can and would make time to conduct as many pre-trial matters as possible, it would take at least two different federal judges in two federal courts to fully adjudicate the Suit. In stark contrast, the State Court (using one state court district judge) has the jurisdiction, authority, and docket availability to handle pre-trial matters, conduct the trial promptly, and render a final decision on the merits in the Suit.

Factor 13 (comity) likewise weighs in favor of abstention and remand. The Suit involves state law issues and deference should be given to the State Court to decide state law

issues under these circumstances. Defendants' suggestion that limited deference should be given to a Texas state court because Delaware corporate fiduciary law (and not Texas state law) applies is not persuasive for several reasons. First, the Complaint alleges both Texas and Delaware state law causes of action. Second, although one of the Debtors is a Delaware corporation, the other two Debtors are Texas corporations; so there may be choice of law decisions to be made. State law (not federal law) will govern choice of law decisions, which are better made here by a state court rather than a federal court who might be making a so-called "*Erie* guess."[12] Third, permissive abstention is warranted even if it results in a state court deciding claims brought under another state's laws. *See Special Value*, 2011 WL 5593058, at *10 (permissively abstaining so that Texas state court could hear New York and Texas state law claims). Finally, Texas state courts have often been called upon to decide Delaware fiduciary law issues. *See, e.g., Longview Energy Co. v. Huff Energy Fund LP*, --- S.W.3d ---, 2017 WL 2492004, at *4 (Tex. June 9, 2017) (applying Delaware fiduciary duty law); *Pride Int'l, Inc. v. Bragg*, 259 S.W.3d 839, 848–51 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (same).

### 2. Factors Neutral or Not Applicable to Abstention/Remand

In sum, four factors are either neutral (do not weigh in favor of or against permissive abstention) or do not apply to the Suit.

Factor 3 (nature of applicable law) is neutral. Currently, it is unclear what the applicable state law or laws will be in the Suit. Plaintiff says that Texas law will apply to the Suit; Defendants say otherwise. *See* Reply, p. 13; Response, pp. 3–4. At some point, a court

---

[12] *See generally Seahawk Liquidating Tr. v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 991 (5th Cir. 2016) (explaining "*Erie* guess").

will need to address these issues, but the State Court is capable of making these decisions. So, in this Court's view, this factor neither weighs for or against permissive abstention.

Factor 8 (severance of state law claims) appears inapplicable under the situation presented. This factor—the feasibility of severance of state law claims from core bankruptcy matters to permit the state court to enter a judgment with enforcement of the judgment left to the bankruptcy court—does not apply here. Any possible resulting judgment in the Suit would be against non-debtors (Defendants); there would be no judgment to enforce against the Debtors in this bankruptcy case. And there are no "core" causes of action to be severed.

Factor 10 (forum shopping) is a neutral factor where there has been "much ado about nothing" between the parties. Plaintiff accused Defendants of forum shopping because the Debtor (acting through Defendant James A. Watt, its President) chose to file the Debtors' bankruptcy case in the Western District of Texas (Austin Division). This novel forum shopping accusation by Plaintiff lacks merit on multiple levels. Forum shopping in the context of permissive abstention is not usually based on where the bankruptcy case was filed; it is based on where the civil proceeding (suit) was filed. Further, Mr. Watt (the decision-maker) is but one of eighteen Defendants in the Suit; the other seventeen Defendants cannot be blamed for any forum shopping. Finally, Mr. Watt adequately explained the decision-making process for the Debtors' bankruptcy filing at the hearing on the Motion; there was nothing untoward (or improper) with the Debtors choosing to file a bankruptcy case in this District.

In turn, Defendants accused Plaintiff of forum shopping because the Suit was filed by Plaintiff in Brazoria County, Texas and not this Court (where Plaintiff has filed other suits against some of the Defendants). This forum shopping accusation by Defendants also lacks

merit. For forum shopping to become a significant factor in an abstention analysis, "it must rise to a level demonstrating an attempt to abuse or manipulate the judicial process." *Official Comm. of Unsecured Creditors of Schlotzsky's Inc. v. Grant Thornton, L.L.P.* (*In re Schlotzsky's, Inc.*), 351 B.R. 430, 435–36 (Bankr. W.D. Tex. 2006) (*citing AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 320 (5th Cir. 2006)). In choosing where to file a lawsuit, a plaintiff inevitably engages in some degree of forum shopping. Similarly, in invoking a particular remedy or process early in a suit (such as removal), defendants also attempt to select the forum perceived as most favorable to their case. *See In re Schlotzsky's, Inc.*, 351 B.R. at 435–36. Unless such strategies approach an abuse of the judicial process (which it has not in the Court's view) this factor neither weighs in favor of, nor against, abstention.

Factor 12 (existence of non-debtor parties) is also neutral. Here, technically the Suit involves only non-debtor parties. But Plaintiff was appointed and the Plan Trust was created in the Debtors' bankruptcy case to pursue the Debtors' causes of action. On balance, this factor does not push the scales one way or the other with regard to permissive abstention.

### 3. Factor Against Abstention/Remand

The Court sees only one factor that weighs slightly against permissive abstention and remand of the Suit. Factor 14 examines the possibility of prejudice to other parties in the action. Here, Defendants suggest they would be harmed if the Suit was remanded to State Court because of other adversary proceedings pending in this Court filed by Plaintiff against some of the Defendants. Thus, Defendants argue prejudice by having to defend, in two different forums, separate suits brought by the same Plaintiff. The Court is quite sympathetic to the concerns of Defendants and recognizes the expense and inconvenience in defending suits filed by Plaintiff in both the State Court and in this Court.

The possibility of significant prejudice and harm to Defendants is mitigated, however, for several reasons. Initially, it must be noted that only eight of eighteen Defendants are also defendants in other adversary proceedings pending in this Court. So, ten of eighteen Defendants (a majority) will not be defending suits by Plaintiff in two forums. Second, at the request of the parties, the Court has abated the other adversary proceedings, and the Court will continue to do so if requested by the parties. Third, these other adversary proceedings filed by Plaintiff seek to recover alleged "preferential transfers" under the Bankruptcy Code from certain Defendants. The claims asserted by Plaintiff in the Suit (state law claims) are not related to and do not overlap with the preference claims (bankruptcy claims) asserted by Plaintiff in these other adversary proceedings. Fourth, it seems unlikely that the outcome in one of the proceedings would affect or prejudice the outcome in the other proceedings. On balance, the Court finds that Factor 14 (possibility of prejudice) weighs slightly against abstention and remand of the Suit.

### D. Conclusion—Permissive Abstention/Equitable Remand

At bottom, nine factors weigh in favor of permissive abstention and remand, four factors are neutral, and one factor weighs slightly against abstention and remand of the Suit. More significant than this raw numerical count, the Court finds that the factors favoring permissive abstention are of greater importance under the circumstances of this Suit.

The text of the permissive abstention statute (28 U.S.C. § 1334(c)(1)) speaks to the "interest of justice," "interests of comity for State courts," and "respect for state law" as each being a separate ground to abstain. Here, all three statutory grounds support the exercise of the Court's discretion to permissively abstain for the reasons set forth in the factors-based analysis above.

From a structural perspective, permissive abstention serves as a counter-balance to bankruptcy jurisdiction. As recognized by the Fifth Circuit, the broad grant of bankruptcy jurisdiction to federal courts under § 1334(b) is tempered by the discretionary power of a federal court under § 1334(c)(1) to abstain from exercising such federal jurisdiction due to the interests of justice, comity with state courts, or respect for state law in a particular case. *See In re Wood*, 825 F.2d at 93. These two statutory concepts must go hand-in-hand; the discretionary abstention statute helps the far-reaching bankruptcy jurisdiction statute from bringing suits into federal courts when they are better left for state courts to decide.

For all of these reasons, the Court concludes that it should exercise its discretion to permissively abstain and equitably remand the Suit to the State Court under 28 U.S.C. § 1334(c)(1) and/or 28 U.S.C. § 1452(b).

## V
## CONCLUSION

In conclusion, this Court has bankruptcy subject matter jurisdiction over the Suit under 28 U.S.C. § 1334(b). However, the Court is required to abstain from hearing the Suit under 28 U.S.C. § 1334(c)(2) (the mandatory abstention statute). Even if abstention was not mandatory, the Court exercises its discretion to permissively abstain and equitably remand the Suit to the State Court under 28 U.S.C. § 1334(c)(1) and/or 28 U.S.C. § 1452(b).

For the reasons set forth in this Opinion, the Court will grant Plaintiff's Motion and remand the Suit to the 149th District Court of Brazoria County, Texas, for adjudication and disposition. A separate Order will be entered by the Court granting the Motion and remanding the Suit consistent with this Opinion.

# # #